[No. 9366.   Department One.   June 1, 1911.]

T. T. WORTHINGTON, *Respondent*, v. CHARLES M. CRAPSER
*et al.*, *Appellants*.[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY — EVIDENCE — SUFFI-
CIENCY.   Lots purchased by a husband with money received from his
father, as an advance from his father's estate, are his separate
property, even if he procured a loan to pay a very small portion of
the purchase price, where such portion was too small to notice.

SAME—EVIDENCE—ADMISSIONS.   The husband's petition for letters
testamentary on the estate of his wife is not an admission that cer-
tain lots which she attempted to dispose of by her will were com-
munity property, where she had other property, and the lots in fact
belonged to his separate estate.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered July 14, 1910, in favor of the
plaintiff, after a trial on the merits before the court without a
jury, in an action to quiet title.   Affirmed.

*Boyle, Warburton & Brockway*, for appellants.
*Burdick & McQuesten*, for respondent.

PARKER, J.—This is a suit to quiet title to lots 11 and 12
of block 9, and lots 1 and 2 of block 3, in Mechanics addition
to Tacoma.   A trial before the court resulted in a decree in
favor of the plaintiff, from which the defendants have ap-
pealed.   Appellants claim an interest in the lots under the
will of Phoebe Worthington, the deceased wife of the respond-
ent, and base their claim upon the ground that the lots were
the community property of respondent and Phoebe Worth-
ington at the time of her death, thus enabling her to dispose
of her interest therein by will.   Respondent claims the lots as
his separate property.

Respondent and Phoebe Worthington were married in 1893.
At that time he had a small store and stock of notions therein

[1]Reported in 115 Pac. 849.

amounting to a few hundred dollars. She had no property at that time. During their marriage respondent's income from his store and other sources did not exceed $500 a year, which was no more than sufficient to provide a living for himself and wife. In 1897 he received about $700 from his father. At that time he purchased lot 12, and a little later he purchased lot 11. He paid for these lots $775, and we think the evidence warrants the conclusion that at least about $700 of the purchase price was paid by the money received about that time from his father. This money appears to have come to him as an advance from his father's estate, and was his separate property. There was probably a small part of the purchase price of these lots made from a loan which he then procured. This loan we think was shown to have been repaid from money which he afterwards received from his father's estate in 1898, when his father died. At that time he recived $400 or $500 from his father's estate, and he then bought two other lots for $300 with that money. These he sold in 1905 for $650, and about the same time bought lots 1 and 2 here involved, which he says he paid for with this money. There may be some room for believing that at that time he procured a loan to pay a balance on their purchase price, the amount of which balance is not shown, but which in any event must have been very small. His wife died in 1909, leaving the will under which the appellants, who are her children by a former marriage, claim an interest in these lots. The respondent is quite an old man, and his testimony, upon which we have to almost wholly depend to determine the status of this property, is not as clear and satisfactory as could be desired; but in any event it bears the stamp of truth, and we believe the foregoing is a fair summary of the facts shown thereby. We believe it fair to conclude, as was done by the learned superior court, that these lots are shown to be the product of his separate funds acquired from his father's estate. In any event, the sums which went towards

their acquisition from any other source were too small for us to notice.

The petition for letters testamentary of the deceased wife's estate filed by respondent, it is insisted, amounts to an admission that these lots were community property. The lots are not described in the petition, though even if they were, we would not be inclined to hold that that fact would estop him from now claiming that they are his separate property under the circumstances. He is by no means a man learned in the law, and from his testimony it is apparent that he had but little conception of the difference between community property and separate property when he filed that petition. The will was in his possession at the time of her death, another person was named as executor therein, and his wife appears to have had some property besides her possible community interest in these lots. Under these circumstances, he presented the will for probate and filed the usual petition therewith. We think that fact was of little or no weight under the circumstances in determining the character of this property. Under all the circumstances, we are constrained to affirm the judgment. It is so ordered.

MOUNT, GOSE, and FULLERTON, JJ., concur.