[No. 15063.   Department One.   March 12, 1919.]

### In the Matter of the Estate of WILLIAM C. FINN. MARGARET FINN, *Appellant*, v. GEORGE L. FINN *et al.*, *Executors etc., Respondents.*[1]

HUSBAND AND WIFE (56, 58)—PROFITS AND PRODUCTS OF SEPARATE PROPERTY. The presumption is that a husband, having possession of both separate and community property, pays an indebtedness out of the fund from which it should be met.

SAME (19, 52, 53)—WIFE'S SEPARATE ESTATE—COMMUNITY PROPERTY—PURCHASE BY WIFE. Where property was purchased and partly paid for by the wife's separate funds, it is to that extent her separate property, and where community funds paid for the balance, the balance is community property.

SAME (19, 20, 54, 58) — COMMUNITY PROPERTY. Where property was purchased and partly paid for by a wife with separate funds, and the balance secured by a joint note and mortgage upon her separate property, its status as her separate property is fixed at that time, and the presumption that it was community property is overcome, although subsequently community funds were used in paying the obligation, where there was no intention as between husband and wife to change the original status of the property.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered January 3, 1918, upon findings in favor of executors, in probate proceedings to determine the widow's interest in real estate.   Modified.

*Andrew Brown* and *Grady & Shumate,* for appellant.

*McGregor & Fristoe,* for respondents.

MACKINTOSH, J.—The respondents were appointed by William C. Finn in his last will and testament as executors of his estate. The appellant, his widow, filed a petition praying that the S. ½ of Section 28,

[1]Reported in 179 Pac. 103.

Township 8 N., Range 24 E., W. M., Benton county, be declared her sole and separate property, and that respondents, as executors of her deceased husband's will, be enjoined from administering upon this portion of the land as his estate. The trial court determined that the S. E. ¼ of Section 28, and 420/1320ths of the S. W. ¼ of Section 28 were community property, and that 900/1320ths of the S. W. ¼ of Section 28 were the separate property of the appellant. The S. E. ¼ of Section 28 we will hereafter call the Lucille Dawson tract and the S. W. ¼ of Section 28 will be called the Will Drew tract.

Lucille Dawson, the appellant's daughter, made a homestead entry on the tract designated by her name. After having obtained title, she sold the property to the appellant, the agreement being that the appellant would pay $400 cash and that $600 should be paid by the appellant to Lucille Dawson's daughter. There was upon the property a mortgage of $1,000. The appellant borrowed $400 on her personal note from the bank with which she did business and received a warranty deed from Lucille Dawson and her husband; the $600 is still held in trust by the appellant for her grandchild. The appellant had a bank account at that time in her own name and had a credit of her own which she used at various times in obtaining loans. She also was the sole owner of one hundred and sixty acres of which about one-fourth was under irrigation and in cultivation. The note for $400 was signed by the appellant alone, and after running for three or four years, was paid in the latter part of 1912 by the deceased, at the same time that he paid several other notes. The original note was replaced by renewal notes, some of which, it would appear from the record, were signed jointly by the appellant and Will-

iam C. Finn.  The mortgage of $1,000 was paid by
Finn in May, 1913.

The other tract was acquired by the purchase of
script; Will Drew, a son of the appellant, having re-
linquished his homestead thereon.  The script for the
tract cost $1,320.  The appellant borrowed $420 of
this amount from the bank upon her individual note
signed by herself alone, and the balance of $900 she
obtained by mortgaging her separate property, the
mortgage company, however, compelling Mr. Finn to
sign both the note and mortgage.  The $420 note was
renewed from time to time, the amount of the note
was increased to $525, and it was finally paid, along
with the $400 note already referred to.  Mr. Finn
appears to have joined in making the renewal notes
which replaced the original note, and the mortgage
upon appellant's separate property was paid by Finn
in May, 1913.

The appellant bases her claim that these tracts are
hers separately upon the fact that, at the time they
were procured, her separate credit was used to ob-
tain the funds which made the initial payments.  The
claim of the respondents is that the property was
community property for the reason that it was ulti-
mately paid for by community funds.  The testimony
shows that William C. Finn owned one tract of land
in his own name, but was engaged in extensive farm-
ing operations upon property which he leased on
shares, and included in his operations were the tracts
here involved.  The appellant's witnesses testify that
Finn, at all times, recognized the tracts here in con-
troversy as being his wife's property, and referred
to them as such, and an effort was made to show
that the rental which she was entitled to for that prop-
erty, but which had not been paid to her by her hus-

band, was used by him in retiring the indebtedness which she had created in making the purchases.

There will be no presumption indulged in that this indebtedness was paid out of community funds, but where the husband has in his possession both community and separate funds, the presumption is that he pays debts from the fund from which properly they should be met. *Guye v. Guye,* 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186. We are of the opinion, however, from the testimony, that her share of the crops raised upon the property was not sufficient to have created any such funds during the years in which it was operated by her husband, and that those crops were not more than sufficient to have paid the taxes and interest during that time, and that the funds which ultimately paid off the indebtedness were community funds created by the husband in his general community operations. These facts, then, present to us the question as to whether the status of the property is to be fixed as of the time of its acquisition or is to be determined by the nature of the funds which ultimately pay off the obligations originally incurred to acquire such property. An interesting argument can be made in support of either view, but, as we take it, the question is foreclosed by our decisions in the cases of *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673; *In re Deschamps' Estate,* 77 Wash. 514, 137 Pac. 1009; *Morse v. Johnson,* 88 Wash. 57, 152 Pac. 677; *Graves v. Columbia Underwriters,* 93 Wash. 196, 160 Pac. 436. In the *Katterhagen v. Meister* case, above, it is said:

"He paid $1,600 upon the purchase price from his separate funds. To that extent the property was separate. The remainder, or $5,050, was paid by the community. When the husband and wife united in the promissory note, the debt created was a commu-

nity debt, and the money borrowed upon the note belonged to the community. It is not material whether they borrowed the money of a third party and paid it to the vendor or gave their note direct to him as a part of the purchase price. The rule would be the same in either case. Nor does the fact that the husband later paid the note out of his separate funds change the situation. The status of the property was fixed at the time of the purchase.''

In this case, so far as the Lucille Dawson tract is concerned, we may say that the appellant paid $400 upon the purchase price from her separate funds; to that extent the property was separate, the remainder, or $1,000 was paid by the community. When she gave her separate promissory note, the debt created was a separate debt and the money borrowed upon the note belonged to her separately. This money was borrowed from a third party, and the fact that her husband later paid off the note by substituting a note signed by both, and that later the note was paid out of the community funds, does not change the situation; the status of the property, so far as the payments made thereon were concerned, was fixed at the time of purchase. The presumption that property acquired during coverture is community property is not overcome as to the share of the property represented by the $1,000 mortgage; no community credit or property was used in securing that share; in fact, the presumption is aided by the fact that community funds were used in paying the mortgage and to that extent this tract must be held to be the property of the community. The reason for this result appears more fully later in this opinion where we deal with the Will Drew tract. The obligation to pay the remaining $600 being solely the appellant's, it follows that one-half of the Lucille Dawson tract

is the appellant's separate estate and one-half is community property.

In reference to the Will Drew tract, $420 of the $1,320 purchase price was obtained upon the strength of the appellant's separate estate, and to that extent the property acquired by her was her separate property, although later the obligation which she assumed may have been liquidated out of the community funds, but the $900 balance of the purchase price was obtained upon a note signed by both members of the community. This note was secured by a mortgage upon the appellant's separate property. It is true that the husband became a joint maker of the note because of the mortgage company's refusal to advance the money to the wife upon her sole signature.

The cases of *Yesler v. Hochstettler,* 4 Wash. 349, 30 Pac. 398; *Main v. Scholl,* 20 Wash. 201, 54 Pac. 1125, and *Heintz v. Brown,* 46 Wash. 387, 90 Pac. 211, 123 Am. St. 937, are cited to the point that funds borrowed by a wife, even though borrowed on her separate property or on property in which she had invested her separate funds, are community property; but this court in *United States Fidelity & Guaranty Co. v. Lee,* 58 Wash. 16, 107 Pac. 870, referring to the *Heintz* case, says:

"We do not desire to further extend the rule announced in that case. In that case, and in the cases from this court there followed, the separate estates were not sufficient to make the purchases, and the credit of the community was drawn upon to complete the purchases. Money was actually borrowed and used for that purpose, so that a community obligation was created and a resulting community interest followed. The property thus purchased was not acquired by separate property, or the rents, issues, and profits thereof;"

and proceeds to demonstrate in the case then under consideration that the wife was not required to create a community obligation and did not intend to do so when she entered into the contract, and that she entered into a contract which she could amply protect from her separate estate, and distinguishes that case from the *Yesler, Main* and *Heintz* cases, laying down this rule:

"Where property is acquired during marriage, the test of its separate or community character is whether it was acquired by community funds and community credit, or separate funds and the issues and profits thereof; the presumption always being that it is community property, but this presumption may be rebutted by proof."

In *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 Pac. 1088, the *Heintz* case was again distinguished, the court saying that in the *Heintz* case the contract was presumably in the interest of the community, while in the case then under consideration the community did not contribute but that the separate funds of the wife were exclusively used,

"notwithstanding there may possibly be a technical sense in which it could be said the loan, evidenced by the note and mortgage executed by both husband and wife, contributed to the acquisition of the Aberdeen property."

In *Graves v. Columbia Underwriters,* 93 Wash. 196, 160 Pac. 436, it was held that the husband joining in a note secured by a mortgage on his wife's separate property, having been compelled to do so by the person loaning the money, did not make the money so obtained community property unless it was put to community uses; that, the wife being a married woman, the presumption is that property acquired during the marital relation would be community property, but

that that presumption. is a rebuttable one. So here, although by signing the note, the husband might have rendered himself liable to the payee, this was done as a matter of accommodation to the wife under the compulsion exercised by the lender; and, as between the husband and wife, the obligation created was not a community obligation but remained as it was originally intended, her separate obligation, although as to third parties the husband and wife would both have been liable had the mortgage security been waived and an action begun to collect upon the note itself. Where it cannot be said that community credit was called upon to assist in the purchase of the property, and that, therefore, the community was not interested in the property, although subsequently community funds were used in paying the obligation evidenced by the note and mortgage, the rule is, as we have heretofore stated it, that the status of the property is to be determined as of the time of its acquisition. The early cases which might seem to indicate that money borrowed by one spouse upon the pledge of separate property becomes community property, it will be discovered, were cases which held, as is noted in cases thereafter decided, that, where the spouse borrows the money upon the pledge of separate property and uses that money for the purpose of acquiring and completing the purchase of property, that does not, of itself, make the property so acquired community property, but merely that the presumption is that property acquired during coverture is community property and that its separate status can be determined by satisfactory evidence. In the instant case, as concerns the Will Drew tract, we are satisfied that such evidence has been produced and that the presumption has been met and overcome; that there was no intention at the

time the property was acquired to involve the community in any obligation for its purchase; the entire payment having been made by money which the appellant secured on her personal liability and for which the community did not become liable except as to third parties.

The decree of the lower court will be modified to conform with the views herein expressed.

MITCHELL, MAIN, and TOLMAN, JJ., concur.