[No. 26406. Department One. April 22, 1937.]

*In the Matter of the Estate of* ROBERT WOODBURN, *Deceased.*

PUGET E. BALL, *as Administrator, et al., Appellants,* v. CHARLES WOODBURN *et al., Respondents.*[1]

---

[1]Reported in 66 P. (2d) 1138.

142

*Warren J. Gilbert,* for appellants.

*Ben Driftmier,* for respondents.

BLAKE, J.—In 1935, Robert Woodburn died intestate, leaving as heirs his widow, brothers, sisters and children of deceased brothers. On the petition of the widow, an administrator was appointed. The administrator filed an inventory, in which all assets of the estate were listed as community property. The heirs, other than the widow, appeared and filed objections to the inventory, asserting that certain of the assets were the separate property of the deceased.

In his final report and petition for distribution, the administrator admitted the separate status of the following described real estate: East half (E½) of northwest quarter (NW¼), section 25, township 35, N. R. 3 E. W. M., in Skagit county. The administrator alleged, however, that, while title to this land was acquired by deceased before marriage, it was in a raw state at that time, and that it had been greatly improved and enhanced in value through the joint efforts of Mr. and Mrs. Woodburn. He prayed "that the value of improvements and services placed upon the separate estate . , . be determined and made a charge against said separate property."

The heirs other than the widow denied the right to such a lien. On the hearing of the final account, the court took evidence on the issue. In its decree of distribution, the court made findings to the following effect: That, during coverture, improvements were gradually made on the land, including building

of fences, paying of dike and drainage assessments, some clearing, and the construction of a granary building; that the rentals received from the property were far in excess of the total of all expenditures for any improvements, taxes and assessments. The court concluded that the claim of the widow and administrator for a lien on behalf of the community should be denied. By the decree, the property was accordingly distributed free from the claim of lien. The widow and administrator appeal.

It appears from the evidence that the Woodburns were married in 1887; that deceased acquired title to the property in question in 1885, the purchase price of the property being $300. (Mrs. Woodburn testified that the entire purchase price had not been paid at the time they were married; that fifty dollars given to her by her father went into the purchase price.) The land was swamp land, covered with brush and bestrewn with logs and stumps. Mr. and Mrs. Woodburn went to live on the property shortly after their marriage. They lived there for some years, during which period and a period subsequent to the time they moved off, the land was gradually brought into a tillable condition by clearing and draining.

It appears that Mrs. Woodburn owned sixty-six acres of land as her own separate property. Apparently there was no segregation made of the proceeds from either piece of property. But that there was substantial income from these properties is evidenced by the fact that other real estate of substantial value was acquired during Mr. Woodburn's lifetime. In addition to that, a very substantial amount of personal property had been accumulated before his death. Cash assets alone amounted to more than $25,000. This real and personal estate, acquired after marriage, was all inventoried as, and conceded to be, community

property. And in view of the commingling of the income from the separate properties, it could hardly be contended that property purchased with their combined funds did not become community property.

■ But it does not follow that the status of the separate property was changed. For the status of property is to be determined as of the date of its acquisition. *Katterhagen v. Meister,* 75 Wash. 112; 134 Pac. 673; *Folsom v. Folsom,* 106 Wash. 315, 179 Pac. 847. When the separate status of property is once established, the presumption continues until changed by deed, due process of law, or some form of estoppel. *In re Sanderson's Estate,* 118 Wash. 250, 203 Pac. 75. And the burden is upon the person claiming it to have changed to establish the fact. *Guye v. Guye,* 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186. Nor does an enhancement in value during coverture affect its separate status (*Guye v. Guye, supra*), unless by the use of community funds in a substantial amount the property is acquired or enhanced in value. *Worthington v. Crapser,* 63 Wash. 380, 115 Pac. 849; *Jacobs v. Hoitt,* 119 Wash. 283, 205 Pac. 414.

Now, in the light of these rules, it seems clear to us that the separate character impressed on the property by its date of acquisition was never lost. The testimony of Mrs. Woodburn that payments on the purchase price were made during coverture out of community and her separate funds is not persuasive in face of the fact that Mr. Woodburn acquired title two years before they were married. See: *Guye v. Guye, supra; Worthington v. Crapser, supra.* The fact that the income from their separate property was commingled raises no presumption that community funds were used in the payment of taxes and assessments. On the contrary, where a husband has separate income, it is presumed that charges against his

separate property are paid out of such income. *Guye v. Guye, supra; In re Finn's Estate,* 106 Wash. 137, 179 Pac. 103.

That the income received from the property in question was more than sufficient to pay all charges of every kind and nature incurred against it, we think is clear from the evidence. In fact, taking into consideration the whole period of the married life of Mr. and Mrs. Woodburn, it is apparent that there was a very substantial excess of income from the property over outlay upon it, the benefit and use of which was enjoyed by the community.

Judgment affirmed.

STEINERT, C. J., MAIN, MILLARD, and GERAGHTY, JJ., concur.

