[No. 26651. *En Banc.* February 7, 1938.]

THE FEDERAL LAND BANK OF SPOKANE, *Appellant,* v. BERTHA SCHIDLEMAN *et al., Defendants,* DOROTHY BOLYARD, *Respondent and Cross-appellant.*[1]

[1]Reported in 75 P. (2d) 1010.

436

*William Healy, Henry R. Newton,* and *Earl G. Dorfner,* for appellant.

*Welts & Welts, Dave Hammack,* and *James R. Hammack,* for respondent and cross-appellant.

GERAGHTY, J.—In this action, the plaintiff sought the foreclosure of a mortgage on eighty acres of land in Skagit county, executed by Samuel Schidleman and his then wife, Bertha, to secure payment of a loan of $7,500, evidenced by a note signed by the husband and wife. In addition to the usual averments, the complaint alleged that the land covered by the mortgage had been purchased, and deed thereto taken, by Samuel Schidleman while a bachelor; that, subsequent to acquisition of title to the land, he married Jennie Schidleman, his first wife; that Dorothy Bolyard, named as one of the defendants, claimed some interest in the mortgaged property as heir or devisee of Jennie

Schidleman, but that her claim was without right, and any interest she might have had was subject and inferior to the lien of plaintiff's mortgage.

Dorothy Bolyard, who, as the record discloses, was the adopted daughter of Samuel and Jennie Schidleman, appeared in the action and set up a claim to an undivided one-half interest in the property, alleging, by way of affirmative defense and cross-complaint, that, in the year 1899, her parents became engaged to marry and, in contemplation thereof, decided to purchase the land in controversy. To that end, they pooled their financial resources, and the mother contributed upward of one thousand dollars of her own money toward the purchase of the land, which was made December 18, 1899.

It is alleged that the deed to the land was taken in the name of Samuel Schidleman for the use and benefit of both parties. In October, 1900, her parents were married and at all times subsequent thereto, until the death of her mother, were husband and wife. She alleged that, after marriage, her parents occupied the land, which was then vacant; that, out of community earnings and funds, by clearing, they rendered the land fit for cultivation; that fences, houses, barns, and outbuildings were placed thereon through community efforts and contributions of community funds; that Jennie Schidleman died in September, 1921, leaving a last will in which she devised and bequeathed to her daughter Dorothy her estate in its entirety; that the estate included an undivided one-half interest in the mortgaged property; that Samuel Schidleman, who was named executor, probated the will and submitted and filed an inventory of the property belonging to his deceased wife's estate, which included the mortgaged property, all of the estate being listed as community;

that, after the filing of the inventory, an order was entered finding the estate to be solvent.

It is alleged that, at the time of the execution of the mortgage, Dorothy Bolyard was a minor and entirely ignorant of the existence of the mortgage until the institution of the action to foreclose; and that the plaintiff had actual knowledge of the fact that Samuel and Jennie Schidleman were husband and wife. The defendant prays that she be declared the owner of an undivided one-half interest in the land, free and clear of any claim of the plaintiff. In a reply, the plaintiff denied the material allegations of the affirmative defense.

After trial of the issues, the court, without making formal findings of fact, entered a decree adjudging that there was due the plaintiff upon the note the sum of $10,096.32; that the mortgage was a valid prior lien on an undivided seven-eighths interest in the property, but that, as to an undivided one-eighth interest, the plaintiff's mortgage was not, and had never been, a lien thereon; that this one-eighth interest was the property of the defendant Dorothy Bolyard, and that she owed nothing to the plaintiff by way of contribution for taxes or otherwise upon it. The plaintiff appeals from that portion of the decree awarding a one-eighth interest in the property to the defendant discharged of the lien of its mortgage, and the defendant cross-appeals from the decree in so far as it adjudges her to own no more than an undivided one-eighth interest.

The material facts are as follows: Samuel Schidleman, in December, 1899, being then a bachelor, acquired title to the property in controversy. The purchase price was $4,500, and it appears that part of this was paid in cash and the balance secured by a mortgage on the land. Prior to acquiring the land,

Schidleman had worked as a day laborer, had farmed for a time on Whidby Island, and had acquired a few cattle and horses and some farm machinery. At the time of its purchase, there were no buildings on the land, and twenty or twenty-five acres remained uncleared.

Samuel and Jennie Schidleman were married in October, 1900. Shortly after their marriage, a three-room house was built upon the land, into which they moved. The land was gradually improved by clearing, fencing, and drainage, and the building of the more substantial home, as well as necessary farm buildings.

In 1921, Jennie Schidleman died, leaving a will in which she devised all of her estate to her daughter, Dorothy Bolyard, the respondent. The will, while devising, in general terms, all of her estate to the daughter, did not specifically describe the property devised. Samuel Schidleman, named as executor in the will, petitioned for probate, listing as community property the eighty acres of land in question. The land was included in the inventory of the community property which was subsequently filed. After appraisal, on his application, a decree of solvency was entered by the court, and no further proceedings were had in the estate.

In the early part of 1923, Schidleman made written application to the appellant, the Federal Land Bank of Spokane, for a loan of $4,500, to be secured by a mortgage on the land. The application stated that the loan was sought to repay borrowed money, aggregating $3,500, for improvements to buildings on the farm, $775, and the balance of the loan, $225, representing stock in the National Farm Loan Association, which he was required to purchase as a condition to the granting of the loan. The application gave the status of Schidleman as that of widower and recites that he

had one child, a girl, fourteen years of age, living at home on the farm.

A second loan, the one sued on in the present case, for $7,500, was made to him by the appellant in 1926. The application recited that the money was to be used for buildings and improvements, repayment of the existing loan of $4,500, and the balance for payment of outstanding indebtedness. The note and mortgage for the second loan were signed by Bertha Schidleman, the second wife, to whom Samuel was married in 1924.

At the trial, over the objection of appellant, witnesses for respondent were permitted to testify to statements made by Jennie before her marriage that she had some funds and was going to put her money into the farm. One witness testified that she had overheard a conversation between Samuel and Jennie Schidleman and a real estate agent, relative to a proposed sale of the property, in which the husband said, addressing his wife, "Well, it's up to you—you have got more money in this place than I have."

Attorneys for appellant testified that, before the loans were made, an abstract of the land had been procured which showed no reference to the probate proceedings. The appellant does not contend that it was entitled to rely upon the abstract, but that reference to it is made solely as tending to show that it had no actual notice of the probate proceedings.

In a memorandum of opinion announcing its decision, the trial court said:

"Recognizing that the property involved, at the time of its acquirement by Samuel Schidleman was the separate property of Samuel Schidleman, and also making liberal allowance for the rents, issues and profits thereof, which would also be the separate property of Samuel Schidleman, there were still improvements made upon the property by the community consisting of Samuel Schidleman and Jennie Schidleman,

his wife, by way of clearing, ditching, fencing, and the building of buildings, which would equal at least one-fourth of the value of said property at the time of the death of Jennie Schidleman, one-half of which interest would descend to the heirs or legatees of the said Jennie Schidleman upon her death, and in this case to her daughter, Dorothy Schidleman, now Dorothy Bolyard, under the terms of her will. I therefore find that the interest of Dorothy Schidleman Bolyard in the property described in plaintiff's complaint, and to which plaintiff's mortgage did not attach, is an undivided one-eighth interest thereof."

It is apparent that the court was not influenced in reaching its conclusion by the declarations attributed to Samuel and Jennie Schidleman as to the source of the funds with which the land was purchased. The court found the respondent entitled to an undivided one-eighth interest in the property, upon consideration of its enhanced value, by reason of the joint efforts of the spouses after their marriage.

In *In re Woodburn's Estate,* recently decided by this court, 190 Wash. 141, 66 P. (2d) 1138, it was sought to impress a lien, in favor of the community, upon land admittedly the separate property of the deceased husband, for the value of improvements and expenditures made upon it by the community. In disposing of the claim, the court restated the applicable rules:

"But it does not follow that the status of the separate property was changed. For the status of property is to be determined as of the date of its acquisition. *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673; *Folsom v. Folsom,* 106 Wash. 315, 179 Pac. 847. When the separate status of property is once established, the presumption continues until changed by deed, due process of law, or some form of estoppel. *In re Sanderson's Estate,* 118 Wash. 250, 203 Pac. 75. And the burden is upon the person claiming it to have changed to establish the fact. *Guye v. Guye,* 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186. Nor does an en-

hancement in value during coverture affect its separate status *(Guye v. Guye, supra)*, unless by the use of community funds in a substantial amount the property is acquired or enhanced in value. *Worthington v. Crapser*, 63 Wash. 380, 115 Pac. 849; *Jacobs v. Hoitt*, 119 Wash. 283, 205 Pac. 414.

"Now, in the light of these rules, it seems clear to us that the separate character impressed on the property by its date of acquisition was never lost. The testimony of Mrs. Woodburn that payments on the purchase price were made during coverture out of community and her separate funds is not persuasive in face of the fact that Mr. Woodburn acquired title two years before they were married. See: *Guye v. Guye, supra; Worthington v. Crapser, supra.* The fact that the income from their separate property was commingled raises no presumption that community funds were used in the payment of taxes and assessments. On the contrary, where a husband has separate income, it is presumed that charges against his separate property are paid out of such income. *Guye v. Guye, supra; In re Finn's Estate*, 106 Wash. 137, 179 Pac. 103."

*In re Brown's Estate*, 124 Wash. 273, 214 Pac. 10; *Rogers v. Joughin*, 152 Wash. 448, 277 Pac. 988.

The land being separate property of Samuel Schidleman at the time of its acquisition, it retained that status thereafter "until changed by deed, due process of law, or some form of estoppel."

There was no deed or anything in the nature of due process of law to effect a change. But the respondent contends that the appellant is estopped by the matters appearing in the record of the probate proceedings of the estate of Jennie Schidleman, as well as by the information in the application for the first loan.

When the mortgages were taken, the probate record, if examined, would have disclosed the death of Jennie Schidleman leaving a will devising her estate to the respondent. It would have also disclosed the

petition of Samuel Schidleman for probate of the will, in which the property was referred to as part of the community estate, and that the executor, after appointment, included the property as such in his inventory; that an order of solvency had been entered.

The extent to which a purchaser or mortgagee of land is bound to take notice of probate records, especially where the decedent's name does not appear in the chain of title, has been the subject of controversy. Undoubtedly, judgments of the superior court in probate proceedings have the force and binding effect of other judgments of the court.

There was no judgment or decree in these proceedings purporting to adjudicate title to the property. The order of solvency merely found the estate solvent and could have been based upon the sufficiency of estate property, other than the land here involved, to pay the debts. But assuming, for the purposes of the case, that the appellant was charged with notice of the probate record, what did that disclose, the knowledge of which would estop the appellant? In 2 Bancroft's Probate Practice 914, § 498, it is stated:

"The inventory is not competent as evidence, other than as a memorandum to refresh memory, in support of a claim of title through the estate. An inventory item cannot be determinative of whether premises are separate or community property, . . ."

In 10 R. C. L. 821, § 127, it is stated:

"The fact that an administrator has by mistake listed his own property as part of the decedent's estate does not estop him from asserting his right thereto, where it does not appear that others have been misled to their prejudice; . . ."

In *Filley v. Murphy,* 30 Wash. 1, 70 Pac. 107, the court, in disposing of a similar contention, said:

"We do not think it follows that appellant is estopped merely because the property may once have been in-

cluded in an inventory. It is quite possible for property to be erroneously included in an inventory by one acting under pure mistake of facts or in ignorance of legal rights. Such conditions in no way change the fact of the real ownership, and incidentally do not affect the right of possession to such ownership."

In a Montana case, *Hoppin v. Long,* 74 Mont. 558, 241 Pac. 636, the court said:

"It seems that, under the authorities, the rule with respect to representations, made as to title in petitions in probate matters, is less strict than that governing pleadings generally, and that, in such matters, unless another has been misled to his prejudice thereby, the representations made by an administrator in a probate proceeding do not preclude him from thereafter asserting his individual rights to the property . . ."

Equitable estoppel is defined in 2 Pomeroy's Equity Jurisprudence (4th ed.), 1642, §.804, as:

" . . . the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

"He [the party claiming estoppel] must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he· has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it." (Id., § 805.)

Whatever may have been the explanation of the inclusion of the land in the inventory of his wife's estate by Samuel Schidleman, by his subsequent mortgage he repudiated his former action. In the meantime, nothing had been done on behalf of the respondent, in re-

liance on the recitals in the probate record, to change her position for the worse. If her mother had had a vested community interest in the land, the failure of her father to include it in the inventory as community property would not have defeated her rights; on the other hand, if the land was in law separate property of the father, his listing of it as property of the community would not of itself make it so, unless someone, in reliance on the record, had changed his position for the worse. Of course, if Samuel Schidleman was not estopped to mortgage, the appellant is not estopped.

The rule with respect to estoppel is illustrated by two of our own decisions growing out of the same transactions. In *Sloan v. West,* 50 Wash. 86, 96 Pac. 684, 17 L. R. A. (N. S.) 960, it was held that Samuel Sloan, the appellant, who had unlawfully contracted a second marriage while his first wife was living, was not estopped, as against the heirs of the second wife, from claiming as his separate estate property which had been inventoried as community property of himself and the second wife, notwithstanding the fact that he had joined in the petition for the administration of the estate as community property, had permitted the administration to continue for several years, and had made no claim to the property as his own until after petition for distribution had been filed.

On a second appeal, *Sloan v. West,* 63 Wash. 623, 116 Pac. 272, the court held he was estopped by his conduct as against the claims of the administrator, attorneys, and guardian *ad litem,* who, in reliance upon his acts, had rendered services to the estate, saying:

"The administrator was appointed with the knowledge and acquiescence of Samuel Sloan, and the attorneys were employed by him, and the appointment of a guardian *ad litem* was a necessary incident to the probate proceeding. Plaintiff was a moving party. He permitted his property to remain in probate for

several years. He allowed part of it to be sold to meet debts and expenses, and he allowed the proceeding to continue until ripe for distribution, and then, because he conceived, as he puts it, that 'they were not treating him right,' he asserts a claim which on its face was so doubtful that it has taken two appeals to this court to settle in his favor. The law will give him his property, but will not deny compensation to those who have in good faith done his bidding."

With respect to the declarations of Samuel and Jennie Schidleman, testified to at the trial, whatever force they might have in an estate proceeding between interested parties to determine the character of the property, they did not bind the appellant, which had no notice of them at the time it took its mortgage.

▮ The land in question being the separate property of Samuel Schidleman, the appellant was not charged with notice of an unliquidated community claim, on account of expenditures and improvements, made upon it. In *Merritt v. Newkirk,* 155 Wash. 517, 285 Pac. 442, it is said:

"The title to property, whether separate or community, is determined as of the date of its acquisition, and the general rule is that, when community funds are expended in improvements on the separate property of one of the spouses, the title to the improvements follows the title to the land."

The judgment of the trial court is reversed, and the cause remanded for further proceedings in accordance with this opinion.

ALL CONCUR.