[No. 3995–II.   Division Two.   March 9, 1981.]

*In the Matter of the Marriage of* OLLIE MAE
JOHNSON *and* ELWIS JOHNSON.

*Hugh E. Fountain,* for appellant.

*Robert Zuanich,* for respondent.

REED, C.J.—Elwis Johnson appeals from that portion of a dissolution decree which awarded Ollie Mae Johnson a lien upon Elwis' separate real estate representing an increase in value solely due to inflation. We reverse and remand for further proceedings.

In June 1970, Elwis purchased a small home in Tacoma. After their marriage in July 1971 Elwis and Ollie Mae used the dwelling as their marital abode until the commencement of this dissolution suit. During this period the marital community made payments on the mortgage that Elwis had assumed on purchase. The only improvements made to the premises during marriage consisted of a fence costing $80 and the installation of a circuit breaker panel costing $312. At trial no proof was offered that these minor improvements enhanced the value of the property. On the contrary, the evidence showed that natural inflationary forces had increased the value of the home from $15,000 on purchase to $29,000 at time of trial. Ninety–five percent of the inflationary increase occurred during the marriage.

Although, in awarding the home to Elwis, the trial court

recognized the home was his separate property, the judge impressed the property with a lien in Ollie Mae's favor in the sum of $8,800. Elwis has no quarrel with that portion of the lien representing Ollie Mae's one–half share of the community funds devoted to reducing the mortgage. His sole contention on appeal is that the trial judge erred by characterizing the increase in value due to inflation as community property and by including in the lien $6,650 as Ollie Mae's "share" of the marital community's interest therein. We agree.

RCW 26.16.010 specifically provides that the rents, issues and profits of separate property are separate property. That natural increases in value are issue or profits of the property generating them has long been recognized in this state. As far back as *Guye v. Guye*, 63 Wash. 340, 115 P. 731 (1911), we find our Supreme Court saying:

> Counsel argue, however, that the natural enhancement in the value accruing while the marital relation existed should be treated as community property. . . . Since by the statute [community property act of 1871] the spouse owning separate property is entitled to the rents, issues and profits thereof, so such owner must be entitled to the natural increase in value, as such increase is as much the issue of such property as would be the rents derived therefrom. . . . We think the statute meant to declare that a specific article of personal property, or a specific tract of real property, once the separate property of one of the spouses, no matter how it may fluctuate in value, remains so, unless, by the voluntary act of the spouse owning it, its nature is changed.
>
> . . .
> . . . Moreover, the right of the spouses in their separate property is as sacred as is the right in their community property, and when it is once made to appear that property was once of a separate character, it will be presumed that it maintains that character until some direct and positive evidence to the contrary is made to appear.

63 Wash. at 348–49, 352. *Accord, Hamlin v. Merlino*, 44 Wn.2d 851, 272 P.2d 125 (1954); *Conley v. Moe*, 7 Wn.2d 355, 110 P.2d 172, 133 A.L.R. 1089 (1941); *Federal Land*

*Bank v. Schidleman,* 193 Wash. 435, 75 P.2d 1010 (1938); *In re Estate of Woodburn,* 190 Wash. 141, 66 P.2d 1138 (1937).

In *Pekola v. Strand,* 25 Wn.2d 98, 168 P.2d 407 (1946), the marital community sought to establish an equitable lien based on proof that cutover land worth $45 when acquired by the husband had been improved with community funds and had a present value of $1,500. The court found there had been a failure to establish the amount invested by the community and rejected the claim, stating:

> We think the criterion which appellants ask us to adopt in determining the amount of the equitable lien claimed is unsound in principle and unsupported by any of our decisions. If adopted, it would give the community a lien for the unearned increment inherent in the present value.
>
> Implicit in our decisions is the rule that an equitable lien may be claimed by the community for improvements upon the separate property of a spouse to the extent only that *community funds are invested.*

25 Wn.2d at 102.

In the instant case it was conceded that the home was Elwis' separate property, having been acquired by him before marriage, using his own funds and assuming a mortgage obligation. Thus under RCW 26.16.010 and the decisional law of this state, the residence remained separate property throughout the marriage. It was uncontroverted that the increased value of the home was solely attributable to inflation, and not to the investment of community labor or funds. Therefore, the increase in value was an "issue" or "profit" within the statutory definition. *Guye v. Guye, supra.* As such the marital community had no basis for claiming credit for the increase. At most, the marital community had an equitable claim for reimbursement for the modest sums expended for improvements to the property.

In determining that the increase in value due to inflation was community property, the trial judge relied upon *In re Marriage of Harshman,* 18 Wn. App. 116, 567 P.2d 667 (1977). In *Harshman,* through what we think was an

improper application of the "contemporaneous segregation" rule of *Hamlin*,[1] Division One of this court employed the presumption favoring community property to place the burden on the spouse owning separate property to prove that an increase in value during coverture did not result from an investment of "community labor." It is not clear from *Harshman* whether the court considered purely inflationary increases to be "issues" or "profits" of the separately owned estate so that proof that inflation was the source would satisfy the burden of proof. Nor is it clear from the record in the instant case why the trial court believed Elwis had not carried his *Harshman* burden.

In *McCoy v. Ware*, 25 Wn. App. 648, 608 P.2d 1268 (1980), Division Three of this court accepts the *Harshman* rationale and holds that the marital community is entitled to reimbursement for the increased value resulting from an investment of "community services or funds". 25 Wn. App. at 650. Otherwise, under *McCoy* and presumably *Harshman,* the community is relegated to a lien for the dollar amount of its investment plus interest. The *Harshman–McCoy* rule, which places the burden of proof on the separate property–owning spouse to disprove that an investment of community funds or labor produced the increase in value, appears to run counter to established precedent in

---

[1]The rule of contemporaneous segregation was devised to cope with problems of identification arising from the hopeless commingling or confusion of income from separate property, usually an unincorporated business, with income from community labor. In such cases the difficulty lies in ascertaining the extent or proportion to which these sources have produced the resulting income. Often, the income in question has been used to acquire other property. Thus, the presumption in favor of the community prevails unless there has been a segregation at the time the income arises. *In re Estate of Smith,* 73 Wn.2d 629, 440 P.2d 179 (1968); *In re Estate of Witte,* 21 Wn.2d 112, 150 P.2d 595 (1944); *Salisbury v. Meeker,* 152 Wash. 146, 277 P. 376 (1929); *Jacobs v. Hoitt,* 119 Wash. 283, 205 P. 414 (1922).

Segregation is usually accomplished by fixing a reasonable salary for the participating spouse. The salary, being the product of community labor, would be community property; the balance of any income remains separate property, *Pollock v. Pollock,* 7 Wn. App. 394, 499 P.2d 231 (1972). *See generally* Cross, The *Community Property Law in Washington* 49 Wash. L. Rev. 729, 766–73 (1974).

this state. The principle is well established that one seeking a community interest in separate property must overcome the presumption to the contrary. *Hamlin v. Merlino, supra; Conley v. Moe, supra; Federal Land Bank v. Schidleman, supra; In re Estate of Woodburn, supra; Guye v. Guye, supra.* In any event, the record demonstrates that Elwis successfully carried the burden imposed upon him by *Harshman.*

Nor is there any merit to Ollie Mae's claim that her performance of the usual homemaker's chores helped produce the increase in value and justifies the granting of the lien. These duties were performed, we are certain, with no expectation of return and would be more than offset by the marital community's use and enjoyment of the family home. *Merkel v. Merkel,* 39 Wn.2d 102, 116, 234 P.2d 857 (1951); *In re Estate of Deschamps,* 77 Wash. 514, 137 P. 1009 (1914); *Worthington v. Crapser,* 63 Wash. 380, 115 P. 849 (1911). The same may be true of the sums expended for the fence and the electrical panel. However, we do not preclude the trial court from considering these latter items upon remand. Whether an equitable lien to secure a right of reimbursement will be recognized ultimately depends upon the equities of the case. In reality, the right does not arise or is merely inchoate unless and until the court determines whether and to what extent the right will be recognized. *But see Conley v. Moe, supra;* Bartke, *Yours, Mine and Ours—Separate Title and Community Funds,* 44 Wash. L. Rev. 379 (1969).

Finally, the mischaracterization of the inflationary increase as community property requires us to remand to the trial court so that it may reconsider the fairness and equity of its property division in light of our opinion. *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966); *Pollock v. Pollock,* 7 Wn. App. 394, 499 P.2d 231 (1972); *Beam v. Beam,* 18 Wn. App. 444, 569 P.2d 719 (1977).

Reversed and remanded for further proceedings in

accordance with this opinion.

PEARSON and PETRIE, JJ., concur.