[Nos. 15573-1-III; 16813-1-III. Division Three. February 19, 1998.]

*In the Matter of the Marriage of* MARLYS STACHOFSKY, *Respondent,* and ROBERT G. STACHOFSKY, *Appellant.*

---

138

*Michael F. Keyes*, for appellant.

*Thomas A. Wolf* and *Scott D. Meyer* of *Reed & Giesa, P.S.*, for respondent.

KURTZ, J. — Robert Stachofsky is employed by Albertson's, Inc., and when he became part of its management team, he was rewarded with valuable stock options. In his marital dissolution proceeding, the court determined Albertson's stock shares purchased with community funds through stock options that had vested during the marriage were community property. The court further determined unexercised Albertson's stock options that were acquired during the marriage but vested after separation were 50 percent community property and 50 percent Mr. Stachofsky's separate property. Mr. Stachofsky appeals the property division because he believes it was not a fair division due to the court's mischaracterization of the stock and the stock options. In a separate appeal consolidated with this case, Mr. Stachofsky contends the court erred in awarding Marlys Stachofsky spousal support while this appeal is pending. In both instances, we affirm the judgment of the trial court.

FACTS

Marlys and Robert Stachofsky were married on December 27, 1977. This was a second marriage for both; at the time

of the marriage, Marlys was 38 years old and Robert was 40 years old. They separated almost 15 years later on October 1, 1992. The marriage was dissolved on February 8, 1996. Prior to their marriage, Ms. Stachofsky was a checker at an Albertson's supermarket, and Mr. Stachofsky was a Grocery Sales Manager, a position he achieved 21 years after he began working for Albertson's as a box boy. His career continued to prosper during the course of the second marriage. He was promoted in succession to Manager, Division Manager, and eventually, a vice-president.

During their marriage, Ms. Stachofsky pursued a real estate career in Spokane and averaged an annual income of $25,000 during the five years prior to the 1992 separation. During this period, Mr. Stachofsky's income increased to an annual income, with benefits, of approximately $150,000.

In August 1982, under the 1982 employee stock option plan, Mr. Stachofsky was granted a set of stock options to purchase 4,000 shares of Albertson's stock. The shares purchased under these options had increased to 22,000 shares at the time of trial. In September 1984, Mr. Stachofsky was granted a second set of stock options under the 1975 employee's stock option plan. Under these options, Mr. Stachofsky purchased 12,000 shares of Albertson's stock while the Stachofskys were together and 19,200 shares after they were separated. The 19,200 shares were purchased with money received from selling stock that was acquired during the marriage.

In December 1991, Mr. Stachofsky was granted another stock option plan which allowed him to purchase 20,000 shares of Albertson's stock. The shares would become available four years after the date of the option and could be purchased in lots of 20 percent of the total shares per year for the next five years.

Mr. and Ms. Stachofsky stipulated to the following facts pertaining to the stock prior to trial:

17. Albertson's Stock.

17.1 The current stock holdings of the Stachofskys

consist of Seventy-Six Thousand Two Hundred Seventy-Four (76,274) Shares, including all earnings, dividends, and other accruals to the holdings as of June, 1995.

a. Of the foregoing shares, Five Thousand Eight Hundred Seventy-Two (5,872) Shares are shares purchased by Robert Stachofsky prior to marriage and additions to those shares by means of stock splits and reinvestment of dividends earned by those shares.

b. Six Thousand Two Hundred (6,200) of the total Albertson's stock shares were acquired by the Stachofskys with community funds and while the Stachofskys were married and living together, but prior to the time when any stock options were granted to the Stachofskys by Albertson's, Inc.

c. Forty-Seven Thousand Two Hundred (47,200) of the shares of Albertson's, Inc. stock held by the Stachofskys were acquired while the parties were married and living together, under Stock Options which were granted and vested while the parties were married and living together. The funds used to acquire these shares were community funds, having been earned by the parties during marriage.

17.2 In the Spring of 1994, Robert Stachofsky sold Six Thousand Five Hundred (6,500) shares of Albertson's stock to exercise a Stock Option for Nineteen Thousand Two Hundred (19,200) additional shares, while paying the tax obligation associated with the exercise of that Option.

17.3 In addition to the foregoing shares, Robert Stachofsky inherited, from his father's estate in the Spring of 1995, Two Thousand Seven Hundred and Twenty-Seven additional shares of Albertson's stock, which are his sole and separate property.

. . . .

18. Unexercised Stock Option.

At the present time, Robert Stachofsky holds an unexercised option to purchase Twenty Thousand (20,000) shares of Albertson's, Inc. stock under the 1986 Non-Qualified Stock Option Plan Agreement. This plan was offered to Robert Stachofsky and accepted in December, 1991, but the vesting of this particular Stock Option began in 1995, after separation of the parties.

The June, 1995 value of this now-vested option to purchase Twenty Thousand (20,000) shares of Albertson's stock, which does fluctuate with the market price of the stock, is approximately One Hundred Ninety-One Thousand Two Hundred and Fifty Dollars ($191,250.00). This value is already discounted for:

(1) Tax to be paid on the exercise of the option at the time of purchase;

(2) The requirement that the stock be held for a two-year period; and,

(3) The price of the stock to be purchased under the option ($16.87 per share).

After the Stachofskys separated, Ms. Stachofsky moved to Edmonds, Washington, and tried unsuccessfully to rekindle her real estate career. She has few marketable skills and will rely primarily on the property she receives from the dissolution of the marriage to live on. From the time of their separation until the trial, Mr. Stachofsky made spousal support payments to Ms. Stachofsky of $3,000 per month.

The property division was essentially agreed upon by the Stachofskys with the exception of the stock shares and options. In the property division, the court awarded Ms. Stachofsky 58 percent of the community estate ($1,493,442) and no maintenance. Mr. Stachofsky received 42 percent of the community estate ($1,080,625) and $752,892 in separate property. The court treated all the shares of stock acquired during the marriage and the 19,200 shares purchased after separation with community funds as community property. The court characterized the stock option for 20,000 shares, which vested after their separation, as 50 percent community property and 50 percent Mr. Stachofsky's separate property.

Mr. Stachofsky appeals the division of the stock. The court ordered a supersedeas bond staying distribution of 14,700 shares of Albertson's stock which were placed in a trust account pending completion of Mr. Stachofsky's appeal.

Ms. Stachofsky filed a motion for maintenance pending appeal. Granting her motion, the court ordered Mr. Stachofsky to pay Ms. Stachofsky $2,000 per month in spousal support for 12 months or until the appeal is completed. The court also ordered that all dividends accumulated and paid on account of the 14,700 shares of Albertson's stock held in trust be paid over to Ms. Stachofsky. Aggrieved by this order, Mr. Stachofsky asks this court to review and reverse the order modifying the supersedeas order. Mr. Stachofsky also filed a separate appeal of the order granting maintenance during the period of the appeal. This appeal has been consolidated with his appeal of the division of property.

## ANALYSIS

 Standard of Review. In a dissolution action, all property, both community and separate, is before the court for distribution. *Friedlander v. Friedlander*, 80 Wn.2d 293, 305, 494 P.2d 208 (1972); *In re Marriage of Olivares*, 69 Wn. App. 324, 328-29, 848 P.2d 1281, *review denied*, 122 Wn.2d 1009 (1993). The court must dispose of all of the parties' property which is brought before it. RCW 26.09.080; *Olivares*, 69 Wn. App. at 328-29. The court has broad discretion in awarding property in a dissolution action, and will be reversed only upon a showing of a manifest abuse of discretion. *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985); *Olivares*, 69 Wn. App. at 328. A manifest abuse of discretion is present if the court's discretion is exercised on untenable grounds. *Olivares*, 69 Wn. App. at 328.

 Stock Purchased Under the 1982 and 1975 Plans. Mr. Stachofsky worked more than 20 years for Albertson's before that company granted him the right to purchase stock at substantial discounts. Most of this time, he was not married to Ms. Stachofsky. He contends the options given under the 1975 and 1982 plans were given for both past and future service. For that reason, Mr. Stachofsky maintains the court should apply the "time rule" found

in *In re Marriage of Short*, 125 Wn.2d 865, 890 P.2d 12 (1995). In *Short*, the court divided stock options based upon a fraction wherein the denominator was the total time of service and the numerator was the respective time of service premarriage, during marriage, and postmarriage. He believes the application of the "time rule" to his case would recognize his "separate" contribution to the stock acquired by means of the stock options granted under the 1982 and 1975 plans. He deals with the fact that community funds were used to purchase some of the stock after separation by allowing the community a credit for those funds in the property distribution.

All of the stock shares purchased under the 1982 and 1975 stock option plans, with the exception of the shares purchased under the fifth option of the 1975 plan, were purchased during the marriage with community funds. They were purchased pursuant to option agreements that were acquired and vested during the marriage. The "time rule" used in *Short* applies only to characterize stock options for future services which are unvested at the time of separation. *Short*, 125 Wn.2d at 872. The "time rule" does not apply to the shares purchased during the Stachofskys' marriage. These shares are presumptively community property unless the presumption is rebutted by establishing that their acquisition fits within a separate property division. *Estate of Madsen v. Commissioner of Internal Revenue*, 97 Wn.2d 792, 796, 650 P.2d 196 (1982), *overruled on other grounds by Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 689 P.2d 46 (1984).

■ ■ Mr. Stachofsky argues by analogy to *Short*. In *Short*, the court recognized that there was a separate property component to the employee stock options because they were granted to the employee for past, present or futures services, of which only a portion represented services contributed during the marriage. Likewise, he asks us to find that the stock acquired under the 1982 and 1975 plans were compensation to him for past, present and future services of which only a small portion is community time.

The purpose of the 1975 Stock Option Plan is stated as follows:

> The purposes of the 1975 Plan were to attract and retain the best available personnel for positions of substantial responsibility, provide additional incentive to employees and promote the success of the business of the Company. The extent of each employee's participation under the 1975 Plan was related to the employee's position, the employee's performance in that position, the employee's length of service with the Company, an evaluation of the employee's potential for advancement and other factors bearing on the desirability of encouraging continuance of the employee's employment with the Company. The number of shares subject to options granted to any employee was and, where applicable, continues to be determined by the Board in its sole and absolute discretion. There were no maximum or minimum number of options that could have been received by any one employee under the 1975 Plan. Options under the 1975 Plan were granted to certain officers and to certain retail and service managers of the Company.

The language of the 1982 plan contains similar language.

The trial court found the purpose of these stock options "was to assure loyalty and the continuation of employment of Mr. Stachofsky." Mr. Stachofsky assigns error to this finding and contends the purpose of the plans was for past as well as future services. On appeal, the issue is whether the finding of the court is supported by substantial evidence. The evidence shows stock options were granted only to certain officers and managers of the company. In fact, Mr. Stachofsky never received stock options until he became a Division Manager, a position he achieved five years after his second marriage. The court certainly could infer the grant of stock options had more to do with Mr. Stachofsky's position in the Albertson's company rather than the length of time it took for him to achieve that position. This substantiates the court's finding that the stock options compensated for present and future services. The court's finding is supported by substantial evidence.

We decline to apply the *Short* "time rule" to these facts.

Because the stocks were purchased during the marriage with community funds, they were properly treated as community property.

On the other hand, the "time rule" could apply to the 19,200 shares purchased under the 1975 plan after the parties separated. The right to purchase 9,600 shares of the 19,200 shares vested before the parties separated but they were not purchased until 1994 when the other 9,600 shares under the fifth option were purchased. The court treated these shares as community property because the option vested during the marriage and they were purchased with community funds. The "time rule" does not strictly apply to these facts, but even if it did apply, the rule was intended to be flexible. *Short*, 125 Wn.2d at 872. The court's treatment of these shares by means of a stock option acquired and vested during marriage, purchased with community funds, was not a manifest abuse of discretion.

Stock Options. On December 2, 1991, 10 months before the parties separated, the Stachofskys acquired the right to buy 4,000 shares of Albertson's stock four years in the future, and 4,000 shares in each of the next four succeeding years. As in *Short*, the stock options were contingent upon Mr. Stachofsky's continued employment and were unvested when granted. Mr. Stachofsky contends the trial court should have employed the *Short* "time rule" to characterize the stock options as partly community and mostly separate property.

He further maintains the trial court's finding that the stock options granted under the 1986 plan were one-half for present services and one-half for future services is unsupported by the evidence. According to Mr. Stachofsky, the evidence and the terms of the plan itself indicate that the options were intended to maintain employee loyalty and productivity. He contends these options, unlike those granted under the 1982 and 1975 plans, were solely to increase maximum performance from the date the options were granted. Additionally, after the first option vested, the additional options remained unvested. This being the case,

at best Mr. Stachofsky allows that the community might have an interest in the first option for 4,000 shares which vested three years and two months after the parties separated.

The option agreement to purchase 20,000 shares of stock under the 1986 plan was executed and accepted by Mr. Stachofsky in December 1991—10 months before the Stachofskys separated. The first option under the plan did not vest until after they separated. The purpose of the 1986 plan was stated as follows:

> The purposes of the 1986 Plan are to promote the growth and profitability of the Company by enabling it to attract and retain the best available personnel for positions of substantial responsibility, to provide key employees with an opportunity for investment in the Company's Common Stock and to give those employees an additional incentive to increase their efforts on behalf of the Company and its subsidiaries.

This seems to indicate the purpose is to reward present and primarily future service of Mr. Stachofsky. However, the court found as follows:

> The grant of this option for 20,000 shares from Albertson's, Inc. was approximately fifty percent (50%) for past and present services to that corporation rendered while the parties were married and living together, and approximately fifty percent (50%) for future services to be provided by Mr. Stachofsky after the parties separated.

> Even if the Court were to find that a significantly greater portion of this option to purchase stock were attributable to the post-separation efforts of Mr. Stachofsky, that finding would not significantly alter the Court's disposition of the parties' property as set forth in the attached worksheets.

These 20,000 shares seem to fit into the precise situation contemplated by the court in *Short*. They are from an unvested employee's stock option granted during the marriage for present and future employment services. If the *Short* "time rule" were applied to these shares, it would give the community an interest for the first 10 months or 10/48 of the first vesting option.

■ ■ We need not remand for application of the "time rule," however, if it is clear that the court would have made the same division regardless of the mischaracterization. *See In re Marriage of Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989). Here the court indicated it would not have changed the 50/50 split of this stock even if it is mischaracterized. Although the character of property is a relevant factor to its distribution, it is not determinative. *In re Marriage of Konzen*, 103 Wn.2d 470, 477-78, 693 P.2d 97 (1985). Rather, the trial court may dispose of both community and separate property "as shall appear just and equitable" considering all relevant factors, including the nature and extent of both the community and separate property, the duration of the marriage, and the economic circumstances of each spouse at the time the distribution is to become effective. RCW 26.09.080. A remand is not required because it is clear that the court would have made the same division regardless of the mischaracterization.

· Fair and Equitable Division of Property. Because of its mischaracterization of the stock options and the stock acquired through them, Mr. Stachofsky contends the trial court awarded Ms. Stachofsky, a healthy spouse of a mid-length marriage with no community debt, an estate equal in value to 100 percent of the actual community estate plus $147,100 of Mr. Stachofsky's separate property. He asserts that such a disbursement is neither fair nor equitable.

■ ■ On review, we consider whether the property division is fair and equitable based on all the facts and circumstances. *In re Marriage of Crosetto*, 82 Wn. App. 545, 557, 918 P.2d 954 (1996) (citing *In re Marriage of Donovan*, 25 Wn. App. 691, 696-97, 612 P.2d 387 (1980)). Ms. Stachofsky received 58 percent of the community estate and no maintenance. Ms. Stachofsky currently has no income other than what she receives from stock dividends—$10,000 to $15,000 per year—and Mr. Stachofsky has an income of approximately $150,000 per year.

Mr. Stachofsky does not establish that the property division was inequitable or an abuse of the court's discretion.

He fails to raise any equitable arguments beyond those addressed above seeking recharacterization of the stock. Considering the age, health, work history, length of marriage, and the postdissolution economic conditions of the parties, the property division was not a manifest abuse of discretion.

 Attorney Fees. Ms. Stachofsky requests that she be awarded attorney fees on appeal as allowed by RCW 26.09.140. RCW 26.09.140 states in pertinent part that: "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." A party to a dissolution action is not entitled to attorney fees as a matter of right. *In re Marriage of Terry*, 79 Wn. App. 866, 871, 905 P.2d 935 (1995); *In re Marriage of Lilly*, 75 Wn. App. 715, 720, 880 P.2d 40 (1994). Ms. Stachofsky was awarded substantial property in the dissolution and should be able to pay her own attorney fees on appeal.

 Post dissolution Award of Temporary Maintenance Pending Appeal. The award of maintenance pending appeal is a matter within the sound discretion of the trial court which will not be overturned absent a showing of manifest abuse of that discretion. *In re Marriage of Harshman*, 18 Wn. App. 116, 127, 567 P.2d 667 (1977), *overruled on other grounds by In re Marriage of Johnson*, 28 Wn. App. 574, 625 P.2d 720 (1981).

In its conclusions of law and decree of dissolution, the court concluded:

> There should be no further support paid from Mr. Stachofsky to Mrs. Stachofsky following January 1, 1996, subject to continuance of spousal support if this matter is not promptly finalized, appeal ensues, or a speedy transfer of assets, which Mrs. Stachofsky will need for expenses, is not made.

Mr. Stachofsky contends there is no change in Ms. Stachofsky's situation which would authorize the court to change its order and grant temporary support during the appeal.

According to Mr. Stachofsky, the only rationale posited by the court for the postdissolution award of temporary maintenance during appeal was the fact he appealed the property award. He argues the court should not be allowed to penalize a person for exercising his right of appeal.

Since trial, Ms. Stachofsky liquidated 2,000 shares of the Albertson's stock awarded to her producing net proceeds of approximately $188,419.95. Most of this cash has been depleted in attorney fees, capital gains tax and living expenses. Ms. Stachofsky has no means of reasonable support other than the limited dividend income from the Albertson's stock which was awarded to her and liquidation of assets. Ms. Stachofsky has significant need for spousal support and Mr. Stachofsky has substantial ability to pay spousal support.

Mr. Stachofsky argues that there is no change in Ms. Stachofsky's situation which would warrant the court to grant temporary support. However, the court found a change in situation is not necessary to award temporary support other than a delay in the transfer of assets. We agree. The award of maintenance pending appeal was reasonable in amount and duration. The record discloses no manifest abuse of discretion.

## HOLDING

In both the property division and the award of temporary support pending appeal, the judgment of the trial court is affirmed.

SCHULTHEIS, C.J., and BROWN, J., concur.

Review denied at 136 Wn.2d 1010 (1998).