[No. 15164. Department Two. April 2, 1919.]

FLORENCE M. FOLSOM, *Appellant,* v. GEORGE F. FOLSOM, *Respondent.*[1]

HUSBAND AND WIFE (48)—COMMUNITY PROPERTY—TIME OF ACQUISITION. The status of marital property is determined as of the time of its acquisition.

DIVORCE (80)—DISTRIBUTION OF PROPERTY—STATUTES. The exact status and amounts of community and separate property of the spouses is not controlling, under Rem. Code, § 989, providing for an equitable disposition of the property on granting a divorce, since the law does not require an equal division of the community property, nor an award of alimony out of separate property.

SAME (80). An allowance of $100 per month out of a salary of $300 for the first three years, and certain portions of the property of the parties, held to be an equitable allowance and division, in view of the origin and amount of the other property.

Cross-appeals from a judgment of the superior court for King county, Allen, J., entered October 25, 1918, upon findings, awarding alimony in an action for divorce, after a trial on the merits. Affirmed.

*George H. Walker* and *Robert B. Walkinshaw,* for appellant.

*Kerr & McCord,* for respondent.

[1]Reported in 179 Pac. 847.

HOLCOMB, J.—The main question presented by this appeal is the adequacy of the alimony granted by the trial court. Briefly summarized, the property consisted, as to its separate character, of certain English railroad securities, possessed by Mrs. Folsom, adjudged by the trial court to be of the value of $5,000; and two hundred and twenty-eight shares of the Novelty Mill Company's stock, valued by the court at $34,200, owned by George F. Folsom; all the rest, residue and remainder of the property was decreed by the trial court to be community property, consisting of the following:

| | | |
|---|---|---:|
| (1) | Summer Home located in Kitsap County | $1,500.00 |
| (2) | British Columbia land, 320 acres, unimproved | 960.00 |
| (3) | Grant Co., Washington, 160 acres, unimproved | 800.00 |
| (4) | Ten-Room residence, Seattle, Wash... | 8,000.00 |
| (5) | Tide-lands, Seattle, Wash. | 2,000.00 |
| (6) | West Seattle lots | 1,000.00 |
| (7) | Two Central Bldg. bonds | 200.00 |
| (8) | Liberty Bonds | 300.00 |
| (9) | War Savings Stamps | 100.00 |
| (10) | Household Furniture, Life Insurance etc. | 3,500.00 |

Total............$17,560.00

The liabilities against the real property, amounting to $12,937.16, were directed to be assumed by the respondent. The foregoing valuations are those determined by the trial court. We may add that quantities of mining and corporation stock of undetermined value were found by the court to be community property. Of the foregoing community property, the appellant was awarded the following: The summer

home in Kitsap county; the ten-room house in Seattle, the West Seattle lots; the two Central Building bonds; the war savings stamps and the Liberty Bonds; $1,500 worth of household furniture; the insurance policy (paid up value $1,285), and approximately one-half of the mining and corporation stock of unknown value; all of the total value of $16,835. In addition to this, the respondent was ordered to pay appellant $600 as attorney's fees; the costs of the suit; that respondent shall pay the appellant $100 a month alimony for three years following the entry of the decree, and $50 per month for a second period of three years immediately succeeding the first. The appellant prays that the decree be modified to allow her $150 per month alimony for life; the respondent by cross-appeal asks that the appellant be allowed no alimony whatever and that the attorney's fee allowed her be reduced one-half. The decree further allowed the appellant the whole of the shares of the English railroad securities and the respondent the whole of the shares of the Novelty Mill Company's stock, on the theory that both of these items are the separate and individual property of the parties.

Appellant hopes to obtain her relief here by attacking the theory of the trial court as to the status of the respondent's Novelty Mill stock, alleging that it is really community and not separate property. We do not feel that this position is very seriously maintained by counsel for appellant, for the testimony is brief but definite and uncontradicted that this stock was the property of the respondent at the time of the marriage. Appellant seems to imply that the stock was not fully paid for, though standing in respondent's name, and that payments were made thereon by subsequent earnings, really belonging to the commun-

ity.   This would seem to be answered by the undisputed fact that the mill stock had paid high dividends uninterruptedly, and that there is no bookkeeping in the record before us to show that such dividends did not make the remaining payments on the shares, the dividends on which were about $3,000 per annum.

Were we disposed to enter into a discussion of this phase of the action, we should be inclined to hold that this case falls within the rule that the character of marital property is determined as of the time of its acquisition; holding in this case that the principle of apportionment does not apply because of the fact that here there is no specific showing or claim made of definite community contribution to the purchase of the stock.   This is in harmony with the principle enunciated in the case of *In re Finn's Estate, ante* p. 137, 179 Pac. 103.   Such discussion is precluded, however, by the fact that the exact status and amounts of community and separate property of the spouses is not absolutely controlling in disposing of property in divorce actions.   Section 989, Rem. Code, reads as follows:

"In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children. . . . "

Having in view this statute and the situation of the property and parties of which that statute takes notice, we can see no reason for disturbing the disposition of the property made in this case by the trial court, whether there be a greater amount of community property that the trial court considered or not.

In divorce, the law does not require an equal distribution of the property, but that it shall be just and equitable. *Webster v. Webster,* 2 Wash. 417, 26 Pac. 864; *Fields v. Fields,* 2 Wash. 441, 27 Pac. 267; and *Morgan v. Morgan,* 10 Wash. 99, 38 Pac. 1054. The trial court, in divorce actions, has much broader and more general powers in disposing of the community and separate property of the spouses according to the equities in the case and the merits of the parties and the condition in which they will be left than merely to divide the community property and award alimony out of the separate property.

In view of the facts, as shown by the record, that the respondent and cross-appellant, during all of the time of the married relations of these parties, allowed the appellant $200 per month out of his salary of $300, or proportionately when his salary was less; that the three children of appellant by her former marriage were maintained and supported out of the allowance made to the appellant, and additional sums required to be paid out at different times for the maintenance of the family by the respondent and cross-appellant, and considering the origin of the property divided and awarded by the trial court, we consider the decree very fair. While it is true that respondent and cross-appellant retains his salary of $3,600 a year for the present, he is a man well into middle life and approaching the time when there will be less certainty of his salary continuing at its present figure, yet out of his prospective earnings he must pay the appellant a continuing alimony over a period of six years in the sum of $5,400. Although it is urged that the appellant contributed to the wealth of the community for seventeen years, and that the wealth continually increased the while, and that that is the usual presumption in

this state regarding the marital relation, nevertheless, it is a rebuttable presumption, and it was shown in this case that appellant actually contributed little, if anything, to the wealth of the community, and that almost the entire earnings of the respondent and cross-appellant by his personal services were appropriated to the use of the appellant and her children and that she did nothing more than maintain a home for him. We can see no preponderance of facts, evidence, or inferences against the findings and decree of the trial court.

Affirmed.

CHADWICK, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.