[No. 31585. Department One. May 31, 1951.]

HALLIE C. GRAHAM, *Respondent*, v. JOHN GRAHAM, *Appellant.*[1]

*Jones, Birdseye & Grey* and *Wright, Booth & Beresford*, for appellant.

*Tanner, Garvin & Ashley*, for respondent.

BEALS, J.—John and Hallie C. Graham intermarried in Seattle, King county, Washington, January 1, 1907, and were, at all times herein mentioned, husband and wife and residents of this state. Two children, a son and a daughter, were born to them, and Mrs. Graham had a daughter by a

[1] Reported in 232 P. (2d) 100.

prior marriage. At the time of the trial of this action, all of the children were over twenty-one years of age.

The plaintiff, Hallie C. Graham, instituted this action, alleging, in an amended complaint, the marriage of the parties; that two children had been born to them, both of whom were then over twenty-one years of age; that for several years the parties had "lived separate and apart"; that the defendant was an architect, earning a substantial income and owning a private yacht; and that the assets of the community would be "dissipated or lost by the defendant either through extravagance of living or improvident investments." In her amended complaint, plaintiff also referred to an agreement which the parties had entered into July 24, 1947, concerning the separate and community property belonging to them.

The plaintiff prayed that she be granted separate maintenance in the sum of five hundred dollars a month, against which should be credited two hundred dollars a month on account of a property agreement theretofore made between defendant and his son for plaintiff's benefit, and that, to protect her allowance, a lien be established against the community property of the parties. Plaintiff also prayed for general relief.

The defendant, John Graham, answered the original complaint, which was never filed, the answer having been verified April 12, 1949, denying certain of the allegations therein contained and, particularly, that plaintiff was entitled to any division of the defendant's property.

By way of a cross-complaint, the defendant alleged that the parties had lived separate and apart for more than five consecutive years and that, during this period, the defendant had made reasonable provision for the support of the plaintiff and that reasonable provision for her future support had also been made. Defendant prayed for a decree of divorce and for other appropriate relief.

Plaintiff filed her answer to the cross-complaint, admitting that the parties had lived separate and apart for more than five consecutive years, and alleging that the

separation was through no fault of hers but was occasioned by cruel treatment of plaintiff by defendant, personal indignities suffered by her at the hands of defendant, and her continued fear of bodily harm, all making it impossible for the parties to live together.

Plaintiff prayed that defendant's cross-complaint be dismissed, and that she be granted relief in accordance with the prayer of her amended complaint, continuing, however, by stating that, without waiving her prayer for separate maintenance but still insisting thereon, she asked that, if the court should determine that the parties should be divorced, the divorce be granted to her, and that the court make a just and equitable division of the property of the parties or a division consistent with their community property agreement of July 24, 1947.

The defendant filed his answer to plaintiff's amended complaint, asking for dismissal thereof and praying that he be awarded a decree as demanded in his cross-complaint.

The issues having been fully completed, the action was tried and the court made lengthy findings of fact reciting the marriage of the parties and the birth of two children who were over twenty-one years of age at the time of the trial; that for more than five consecutive years prior to the commencement of the action plaintiff and defendant had lived separate and apart; that this separation had continued since the commencement of the action; that the plaintiff was over sixty-six years of age, and was suffering from a serious back injury requiring medical care; that she was without earning capacity; that the defendant was seventy-seven years of age, an architect and engineer by profession, then engaged in the construction of an apartment house in Seattle and enjoying substantial earning capacity; that the community property of the parties consisted of certain items, the total valuation thereof amounting to more than one hundred eighty-five thousand dollars; that John Graham, Jr., the son of the parties, was obligated to pay to plaintiff the sum of two hundred dollars a month as long as both of his parents were living, and that this obligation, on the basis of

defendant's life expectancy, amounted to more than ten thousand dollars.

The court also found that the defendant owned no separate property; that the plaintiff owned separate property of the value of approximately twelve thousand dollars; that the plaintiff was entitled to an equitable division of the community property, specifying the items thereof; that the defendant should be awarded specified items of community property, and should be required to pay his outstanding indebtedness, including a note in the sum of twenty-five thousand dollars; that plaintiff should also be required to pay all outstanding obligations incurred by her while living apart from defendant; that the sum of fifteen hundred dollars was a reasonable amount to be allowed plaintiff on account of her attorneys' fees and costs; and that plaintiff's rights under various property settlement agreements which had been made between the parties should be terminated.

From the findings of fact, the court entered its conclusions of law, stating that the court had jurisdiction over the parties to the action and their respective properties; that the plaintiff and the defendant were each entitled to a decree of divorce; that the property of the parties, both real and personal, should be distributed to the respective parties in accordance with the schedule contained in the findings of fact; that each party should be required to make, execute, and deliver such instruments or conveyances as might be necessary or convenient to effect the division of the property; that each party should be required to pay outstanding obligations described in the findings of fact; that, upon conveyance to plaintiff of the property awarded to her pursuant to the decree, plaintiff's rights and interests under the property settlement agreements between the parties should terminate; and that the defendant should pay to plaintiff, within six months, the sum of fifteen hundred dollars to apply on her attorneys' fees and the costs of the action.

March 20, 1950, the court entered a decree in accordance with the findings of fact and conclusions of law.

The defendant moved for a new trial, which motion, after argument, was denied by a written order bearing date April 24, 1950.

From the decree entered, the defendant has appealed and makes eleven assignments of error, the first five reading as follows:

"(1) The trial court erred in making and entering Finding of Fact IV in the following particulars:

"(a) In finding the value of the yacht 'Pelagic' to be of the value of $35,000, or in any sum or in any amount net over and above $22,500.

"(b) In finding the value of the stock in Decatur Apartments to be of the value of $40,000, and failing to find that it had any value other than a nominal amount, if any

"(2) The court erred in entering its Finding of Fact VI in finding that the respondent was entitled, as 'an equitable share of the community property,' to any of the specific items, other than the certain paintings, books, and items of personal effects in the Bainbridge Island home, other than her own separate property, and other than her right to receive $200 per month under the agreement dated December 19, 1947, between appellant and John Graham, Jr.

"(3) The court erred further in said Finding of Fact VI in fixing and placing a value upon the yacht 'Pelagic' in the sum of $35,000, or in any sum or in any amount other than $22,500 net, and in fixing the value of the stock interest in Decatur Apartments, Inc., in the sum of $40,000, or in any sum or in any amount other than a nominal value, and thereby awarding appellant property of manifestly excess valuation, and thereby accomplishing an award of property to the appellant of a less value than 50% of the entire community property.

"(4) The court erred further in said Findings of Fact IV and VI by failing to find that a fair and equitable disposition and division of the property would be accomplished by requiring appellant to make an adequate, secured and certain provision for the life-time support of respondent, in an adequate amount, rather than to award her any property, other than her own separate property and family keepsakes.

"(5) The court erred in Finding of Fact VIII and in finding that $1500.00 was a reasonable sum, and in failing to find that any sum or any amount was a reasonable sum, to be allowed to respondent to apply upon her costs and attorneys' fees."

Appellant then assigns error upon the court's conclusions of law following the findings upon which error is assigned as above set forth, and upon certain provisions of the decree entered by the trial court embodying the findings of fact and conclusions of law upon which appellant has assigned error.

The trial court, in orally summing up the record at the close of the case, said:

"The questions before the Court are comparatively simple. First of all, is the question of granting a divorce, and secondly, is the question of how the property is to be divided."

The trial court continued by stating that each party should be granted a divorce from the other; that it was unnecessary to attempt to fix the blame for the separation of the parties; and that it should be assumed that the fault was mutual and not solely that of either party.

Rem. Supp. 1949, § 997-2, reads in part as follows:

"Divorce may be granted by the Superior Court on application of the party injured for the following reasons:   . . .
"(9) A divorce may be granted to either or both parties in all cases where they have heretofore lived or shall hereafter live separate and apart for a period of five consecutive years or more, without regard to fault in the separation.
. . . ."

The evidence shows beyond question that the parties had lived separate and apart, each from the other, for a much longer period than five years, and that a decree divorcing respondent and appellant was appropriate.

The trial court was clearly correct in entering the decree of divorce, and further discussion of this phase of the record is unnecessary.

By the decree entered by the trial court, the community property of the parties was divided between them, each specific portion of the property being described and its value as fixed by the trial court being stated. Each party was ordered "promptly to make, execute and deliver such instruments and conveyances as may be necessary or convenient" to carry into effect the purposes of the decree.

Appellant was "required to pay outstanding obligations of every nature incurred by him," including a note for the sum of twenty-five thousand dollars. Respondent was required to pay all obligations incurred by her while living separate and apart from appellant.

The decree also provided that, upon conveyance to respondent of the property awarded to her by the decree, her rights under property settlement agreements between the parties should terminate.

One of the properties belonging to the parties was the "Pelagic," a luxury yacht built in accordance with appellant's orders, about three years before the trial, at a cost of approximately seventy-two thousand dollars. The yacht was awarded to appellant at a valuation of thirty-five thousand dollars, and appellant assigns error upon this valuation of the yacht, contending that it should not have been valued at more than twenty-two thousand five hundred dollars. Appellant testified that the yacht was worth about twenty-five thousand dollars and that, upon its sale, a brokerage fee must be paid which would reduce the net amount received by the seller to twenty-two thousand dollars.

From the testimony, it appears that the "Pelagic" is probably the only yacht of its type and class in the Puget Sound area. Appellant evidently wanted a luxurious yacht, and paid over seventy thousand dollars of community money to have the "Pelagic" built according to his wishes. Naturally, such a boat would not have a definite market value, as few persons would wish to purchase such an expensive yacht.

Under the circumstances disclosed by the record, appellant is in no position to complain of the trial court's ruling fixing the value of the yacht at thirty-five thousand dollars, something less than half its cost.

It may also be noted that the record contains testimony, by a witness familiar with yachts of various types, to the effect that the boat might well have a market value of approximately the amount fixed by the trial court.

Appellant argues that the valuation of forty thousand dollars placed by the trial court upon his stock interest in

the corporation, Decatur Apartments, Inc., was too high. From appellant's testimony and that of his witness Oscar A. Carlson, an electrical contractor associated with him in the project, it appears that the two men owned the corporation, which they had organized for the purpose of constructing a large apartment house in the city of Seattle, and that, at the time of the trial, two of fourteen proposed stories had been built. Appellant testified that the corporation owed him thirty-five thousand dollars by way of architect's fees, and that he had invested about the same amount of money, as well as some land, in the project. Apparently, appellant owned one half of the preferred stock of the corporation, which had a total par value of forty-nine thousand dollars, and Mr. Carlson owned the other half. The two men had subscribed for all of the common stock of the corporation but had not paid therefor.

Appellant's witness, Mr. Carlson, testified that he and appellant had advanced forty-nine thousand dollars to the corporation, which was represented by its preferred stock, and that each of them had advanced the further sum of nineteen thousand dollars for the benefit of the project. The witness testified that, at the time of the trial, the work had been in progress for about a year and that more money would have to be advanced to complete it. The witness further testified that he had a one-half interest in the money due appellant from the corporation for his services as architect, and that twenty-four thousand dollars of this money had actually been expended, leaving only eleven thousand dollars still due.

The testimony of appellant and his witness Carlson in this connection is extremely confusing. It clearly appears, however, that the two men procured an FHA building loan of well over one million dollars from the Prudential Insurance Company.

John Graham, Jr., the son of the parties to this action, and also an architect, was called as a witness by respondent and testified that, in his opinion, all of the stock in the corporation owning the Decatur apartment property was worth

from eighty to one hundred thousand dollars, and possibly some thirty thousand dollars more. He frankly stated that, at the time of the trial, no very definite value could be accorded to the stock. The witness testified that, in his opinion, appellant's half of the stock should be worth sixty-seven thousand dollars.

Toward the close of the trial, respondent's counsel stated that his client accepted the valuation of forty thousand dollars which the trial court had indicated would be placed upon appellant's interest in the stock.

Appellant's assignment of error in this connection is without merit.

Appellant also assigns error upon another portion of the court's finding No. 6 by which the court found that respondent was entitled to an equitable share of the community property and that she should receive real and personal property itemized in the finding, which property was awarded to respondent by the decree entered in the action.

Appellant argues that the court erred in finding that respondent was entitled to any specific items of community property,

". . . other than the certain paintings, books, and items of personal effects in the Bainbridge Island home, other than her own separate property, and other than her right to receive $200 per month under the agreement dated December 19, 1947, between appellant and John Graham, Jr."

Examination of the record convinces us that the court did not err in awarding to respondent the personal property set over to her by the decree from which this appeal is prosecuted. Appellant's assignment of error last above referred to is without merit.

Appellant's assignment of error No. 4, *supra,* reads as follows:

"The court erred further in said Findings of Fact IV and VI by failing to find that a fair and equitable disposition and division of the property would be accomplished by requiring appellant to make an adequate, secured and certain provision for the life-time support of respondent, in an adequate

amount, rather than to award her any property, other than her own separate property and family keepsakes."

■ The evidence amply supports the trial court's refusal to enter a decree merely providing for respondent's support during her lifetime, rather than awarding to her a proper share of the community property belonging to the parties. Respondent owned her community interest in the property and, upon the entry of the decree of divorce, was entitled to receive an appropriate portion of that property.

Appellant's assignment of error in this connection is also without merit.

■ Appellant assigns error upon the court's finding of fact No. 8, fixing fifteen hundred dollars as a reasonable sum to be allowed to respondent on account of her attorneys' fees and costs in the action. This finding was carried into effect by paragraph No. 7 of the decree.

The statement of facts is voluminous, that portion thereof containing the trial record consisting of over four hundred forty pages. In view of the length of the trial, as disclosed by the statement of facts, and the amount of property involved, the award to respondent by way of attorneys' fees and costs was reasonable.

By assignment of error No. 10, appellant contends that the trial court erred in not awarding all of the property of the parties, other than respondent's separate property and personal effects, to appellant, with the provision that this property be appropriately pledged by appellant to secure an annuity to respondent for the remainder of her life, rather than awarding portions of the property to respondent and portions to appellant, respectively, as their separate properties.

We have already discussed a very similar assignment of error, and we repeat that the trial court was correct in dividing the community property of the parties between them in severalty. From the facts disclosed in the record, it clearly appears that respondent was entitled to her share of the community property, as the property was of such a nature that it could easily be divided between the parties

without in any manner jeopardizing the future welfare of either respondent or appellant.

The record before us is free from error, and the decree appealed from is accordingly affirmed.

SCHWELLENBACH, C. J., HILL, DONWORTH, and FINLEY, JJ., concur.

---

August 27, 1951. Petition for rehearing denied.