[No. 39448.    Department Two.    May 2, 1968.]

ROBERT E. WORTHINGTON, *Respondent*, v. JANET MAIN WORTHINGTON, *Appellant.**

*Burns & Schneiderman* and *James D. Burns*, for appellant.

*Trena Belsito Worthington*, for respondent.

*Reported in 440 P.2d 478.

WARD, J.†—The defendant appeals from a decree dividing the property and granting each party a divorce. The only issues raised on this appeal center around the property division and evaluation of real estate made by the trial court.

The precipitating cause of the action was defendant's failure to respond to an ultimatum by the plaintiff, husband, that, unless the defendant, wife, returned to their Quilcene home to live with him, he would seek a divorce.[1]

The parties were married in 1932, left the state almost immediately, and spent the first 12 years of their marriage in New Haven, Connecticut, New Orleans, Louisiana, and Columbus, Ohio. Mr. Worthington had a degree in forestry and spent those years, first, in graduate training in forestry and, thereafter, in the employ of the United States Forestry Service. In 1944, the parties returned to Washington, where they opened a checking account with the proceeds from the sale of their Columbus home. From 1936 through 1966, Mr. Worthington received an annual distribution of funds from his father's estate which amounted to a total of $77,574 over the years of marriage. These funds, along with plaintiff's earnings, which averaged only $2,673 for the years of the marriage, were deposited in the same checking account. In 1947, a home in Quilcene was purchased from the estate of plaintiff's father for a consideration which included cash in the sum of $5,000, plaintiff's one-seventh interest in the property, and a second one-seventh interest in the property which was contributed as a gift by plaintiff's sister.

During the later 1940's, plaintiff had little gainful em-

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

[1] The parties had lived apart for a period of 11 years. In 1955, the defendant took the two children to Port Townsend to satisfy the wish of both spouses that their children be provided a good education. The defendant refused to return after the children's education in Port Townsend was completed. Except for visits, the parties continued to live separately, plaintiff in Quilcene, defendant in Seattle, where she moved from Port Townsend with the children in 1961. Throughout these years, the plaintiff paid his family's living expenses and his children's educational expenses.

ployment, but was engaged principally in seeking out, investigating, and purchasing timber lands. The most recent purchase of such property was made in 1960. At the time this action was commenced, plaintiff and his brother owned, as tenants in common, 34 parcels of cut-over timber land comprising approximately 1,600 acres. The trial court found the value of plaintiff's interest in these tracts to be $40,000. The trial court found that the plaintiff owned 11 additional parcels of cut-over timberland amounting to approximately 500 acres. The court evaluated the 500 acres at $125 an acre for a total of $62,500. The total purchase price paid by plaintiff for his interest in all of the 45 parcels was approximately $18,593. Cuttings of timber at various times returned in excess of $34,000 as plaintiff's share of the proceeds. This money found its way into the same checking account from which all expenditures were met, including living expenses, timber purchases, and home improvements.

At the time this action was commenced, the parties' two children had reached their majorities, plaintiff was 66 years of age, and the defendant was 57 years of age. The court found, without stating any further facts or details, that both were "physically disabled to a certain degree," and that "each of the parties hereto have treated the other in a cruel manner rendering life burdensome." Neither of these findings is challenged, but we have reviewed the record and conclude that a consideration of the "respective merits of the parties" justified what the trial court did; namely, attempt to make a fairly equal division of the property. Both parties suffer from somewhat serious disabilities and handicaps, but, from the record, we cannot say that one party is more seriously handicapped than the other, and considering, as the trial court must, "the condition in which they will be left by such divorce,"[2] we find nothing which could justify the trial court in making anything except a fairly equal division of the total assets. We do not believe that the case law of this state will be in any manner aided

---

[2]RCW 26.08.110.

by a detailed recital of the disabilities from which each party suffers or is likely to suffer in the future, or by a lengthy discussion of the acts of cruelty inflicted by each party against the other over the years.

The challenge which the defendant makes to the valuation placed by the court on the items of property awarded to the parties requires a statement of the facts relating to those particular items. We see no need to discuss any other items of property or the disposition which the court made of such other property in its decree. The defendant challenges the valuation placed by the court on only three items of property. These will be referred to as the Wa Wa Point property, the home property, and the cut-over timber lands.

■ Defendant possessed property which, all agreed, was inherited property. The trial court so found and placed a value of $129,800 on these assets. All of this property was awarded to Mrs. Worthington. She contends that part of this property, the Wa Wa Point property, was evaluated "on the high side." We find that her position is without merit. The property included 660 feet of waterfront on Hood Canal, and the $75,000 figure set by the trial court was within the range of the evidence. Competent appraisers set the value at both higher and lower figures. This court will not substitute its judgment for that of the trial court on a disputed factual issue. This includes the evaluation of property. *Meeks v. Meeks,* 61 Wn.2d 697, 379 P.2d 982 (1963).

■ Defendant claims undervaluation of the Quilcene home, awarded to the plaintiff, and the 32-acre tract of land on which it was situated. The home and its site were appraised at $27,400 by plaintiff's expert, and at $35,000 by defendant's expert. The court set a $27,000 valuation. We are unable to say that the court had no substantial evidence in the record upon which to support its determination. *Friedlander v. Friedlander,* 58 Wn.2d 288, 362 P.2d 352 (1961). The record shows that, even though the home was well kept, it was very old, it was too large for the average

family, upkeep was expensive, and it would be difficult to sell in an area such as Quilcene. Exhibit 10-A, which consisted of plaintiff's answers to defendant's interrogatories, was admitted into evidence. In these answers, he valued the Quilcene home and land at $27,000. An owner may testify as to the value of his property and the weight to be given to it is left to the trier of fact. *Ingersol v. Seattle-First Nat'l Bank*, 63 Wn.2d 354, 387 P.2d 538 (1963); *Cunningham v. Town of Tieton*, 60 Wn.2d 434, 374 P.2d 375 (1962).

Defendant claims that the per-acre evaluation of $125, placed by the court on the 11 tracts of separately owned, second-growth timberland, is too low. At several points during the course of the trial, the court requested that the focus of attention be centered upon the issue of valuation of the timberland. The only evidence introduced by the defendant on this vital issue was the testimony of a Port Townsend realtor, who estimated the value of timberland in the county where the parcels were located to be $250 to $500 an acre, but who testified on cross-examination:

Q. . . . [D]o you know if the Worthingtons have any wild land without any timber on it? A. I do not know. I haven't checked into Mr. Worthington's land at all. Q. Have you ever sold him any land? A. No, I have not. Q. Have you ever sold anybody else land that belonged to him? A. No, I have not. Q. And you are not in a position to say what the Worthington land is worth? A. No, I would not be competent and I would not want to say at the present time that I was qualified, because of the fact that I am not a timber cruiser. Q. In fact, you don't know anything about the worth of the land? A. That is correct.

We agree with the witness' self-appraisal that he was neither competent nor qualified to evaluate the timberland owned by the Worthingtons.

Defendant offered no other testimony of value, even though the court had required plaintiff to put a $1,250 bank account at the disposal of the defendant for the purpose of allowing her the funds necessary for the preparation of her case for trial. The funds were not expended, and were eventually included in the assets awarded to the defendant

out of the property which the court concluded was community property. The findings and conclusions refer to this $1,250 amount as "in the approximate amount of $1,000.00."

All other expert testimony on the value of the timberland was presented by the plaintiff. Defendant asks the court to give considerable weight to the testimony of a real-estate broker, called to place a valuation on the Wa Wa Point property. He testified that the Wa Wa Point property was worth $85,000. In the course of his testimony, he stated that the timber on the Wa Wa Point property was valued at $500 per acre, and, on cross-examination, stated that he would value timberland in Jefferson County at that figure. He had never seen the Worthingtons' cut-over land, and, from his testimony, it was impossible to determine whether by "timber land" he referred to old-growth or second-growth timberland. He established no qualification to appraise timberland generally. It was the function and duty of the trial court to give this testimony such weight as he deemed it merited.

Plaintiff evaluated the timberland at approximately $50 per acre. The Jefferson County assessor testified that the actual value of the timberland was between $125 and $150 per acre. Plaintiff's brother, the owner of an undivided one-half interest in 34 of the parcels, described the land as "cut-over or reforestation land," and valued it at $135 an acre. The trial court, in its supplemental memorandum opinion, stated that there were approximately 500 acres separately owned by the parties to this action, and 800 acres represented plaintiff's share of the 34 parcels owned in common with his brother. The court, consistent with this allocation, made a finding that the parcels owned separately were worth $62,500, at $125 an acre, and that the plaintiff's share of the remaining parcels was worth $40,000, at $50 per acre. We cannot say that the $125 per-acre valuation was not supported by substantial evidence. *Hewitt v. Hewitt,* 66 Wn.2d 923, 400 P.2d 771 (1965); *Hogberg v. Hogberg,* 64 Wn.2d 617, 393 P.2d 291 (1964); *Dickison v. Dickison,* 65 Wn.2d 585, 399 P.2d 5 (1965); *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966); *Graham v. Graham,* 38

Wn.2d 796, 232 P.2d 100 (1951). The valuation of the 500 acres at $125 per acre was within the range of the credible evidence and, therefore, will not be disturbed. *Skinner v. McCrackan,* 93 Wash. 43, 159 Pac. 977 (1916); *Haskins v. Fidelity Nat'l Bank,* 93 Wash. 63, 159 Pac. 1198 (1916); *Eckhardt v. Harder,* 160 Wash. 207, 294 Pac. 981 (1931); *Kenney v. Abraham,* 199 Wash. 167, 90 P.2d 713 (1939); *Oestreich v. Oestreich,* 2 Wn.2d 72, 97 P.2d 655 (1939); *Becwar v. Bear,* 41 Wn.2d 37, 246 P.2d 1110 (1952); *Grays Harbor Cy. v. Bay City Lbr. Co.,* 47 Wn.2d 879, 289 P.2d 975 (1955).

We believe that the trial court was in error in fixing a $50 per-acre valuation on the timberlands owned by the plaintiff and his brother as tenants in common. The rationale of the court was:

> The Court believes that property that is held in common by two or more persons has substantially less value than property where the full title is owned by one person. So long as the tenants-in-common agree upon the development or disposal of such property, it can be managed and handled quite well; but in the event they disagree, the sale and liquidation winds up in court with forced sales at a substantially reduced price.

We could agree with the court's reasoning in this case if there was evidence to support it. The trial court's findings are determinative of the factual issues involved only when there is evidence in the record to sustain them. In the instant case, we find no evidence in the record to support the $50 valuation placed by the court upon the timberlands owned in common by the plaintiff and his brother. See *Atkinson v. Atkinson,* 38 Wn.2d 769, 231 P.2d 641 (1951); *Blood v. Blood, supra; Hogberg v. Hogberg, supra; Dickison v. Dickison, supra; Graham v. Graham, supra.* There was no attempt on the part of any of the witnesses to distinguish between the quality or the value of the lands held by plaintiff in separate ownership and the lands which he owned in common with his brother. In fact, plaintiff's brother, Norman Worthington, drew no distinction between

the various parcels: "[T]aking the part I own with Robert and the part he owns separately, $135 per acre."

Neither does this court have any factual basis for making a determination whether the lands owned in common should, by reason of such joint ownership alone, be valued at any lower figure than the land owned individually by the plaintiff. Such factual determination would depend on many facts and circumstances, none of which is set out in the record. Included in the factors pertinent to such factual determination would be the relationship between the co-owners, whether friendly or hostile; the willingness of both to sell when a favorable sale can be made; the necessity of partition in order to effectively deal with the property; if partition be necessary, whether it can be agreed upon without the delay and expense of court proceedings; and, the ability of each of the co-owners to bear his share of the burden of taxes and expenses incident to ownership. If the court, upon competent evidence, does determine that co-ownership alone requires devaluation to some extent, the court cannot determine the amount or extent of the devaluation without evidentiary support. Neither this court nor the trial court can make these necessary findings and determinations from the present record, and it will be necessary that we remand this case to the trial court. On such remand, if the court is to make any devaluation of the land owned as tenants in common by reason of that fact alone, then it will be necessary that further testimony be taken to determine the factual issues involved.

Defendant claims that the final division of the property was inequitable. The trial court awarded property valued at approximately $176,000 to the plaintiff and $157,000 to the defendant. The main emphasis of defendant's argument on inequity in the division of the property centers around the contention that the court erred in several instances in its characterization of the properties as separate or community. Defendant would urge that everything which was purchased out of the checking account should have been characterized community property. The result defendant

would reach from such an approach would be to award defendant all of her $129,800 in separate property and, in addition, one-half of all other assets, excepting the plaintiff's one-seventh interest in his father's estate, remaining undistributed and valued at $31,306. Such an approach would have resulted in the award to the defendant of property of the value of approximately $216,277 and would have awarded to the plaintiff property of the value of $117,783. Such an approach would be wholly inequitable. A fair and equitable basis for the division of the property is reflected in the trial court's reasoning set out in the memorandum opinion:

> The evidence seems to very definitely establish that during the marriage of the parties of approximately thirty years, there was one joint bank account maintained by them. Into this bank account the plaintiff deposited all of his separate property, both principal and interest. However, it is quite clear that the plaintiff spent for the support and maintenance of the defendant and the minor children a substantial amount of money in excess of his earnings, and necessarily had to spend the additional sum from his separate property. The record also discloses that the defendant was rather careful to keep her separate property segregated and very little of it commingled with the community earnings or the plaintiff's separate property. He should not be penalized for his generosity and the proper maintenance of his family and education of his children.

> The evidence preponderates in favor of the fact that the timberland in question was purchased with funds received by the plaintiff from his separate estate. However, the line is not too clear, and notwithstanding the predominantly separate color of title of the timberland, it has some substance of community characteristics; and the Court feels that under the law [RCW 26.08.110], which provides: "Judgment shall be entered . . . making such disposition of the property of the parties either community or separate as shall appear just and equitable having regard to the respective merits of the parties, to the condition in which they will be left by such divorce or annulment, to the party through whom the property was acquired," that the Court's problem is what is just and equitable in this case under the law.

Even though the trial court may not have properly characterized the timberland as separate property by reason of the commingling of plaintiff's separate and community funds, we think the court's approach was correct in light of the facts of this case, the statute, emphasizing the necessity of a just and equitable division of the property, and the law which provides that all property of the parties, whether it be community or separate in nature is subject to the jurisdiction of the court. *Ovens v. Ovens*, 61 Wn.2d 6, 376 P.2d 839 (1962); *Nelson v. Nelson*, 61 Wn.2d 608, 379 P.2d 717 (1963); *Wolfisberg v. Wolfisberg*, 51 Wn.2d 103, 316 P.2d 114 (1957); *Patrick v. Patrick*, 43 Wn.2d 139, 260 P.2d 878 (1953); *Beakley v. Beakley*, 25 Wn.2d 228, 170 P.2d 314 (1946).

■ The ultimate question is whether the final division of the property is fair, just, and equitable. *Morris v. Morris*, 69 Wn.2d 506, 419 P.2d 129 (1966); *Friedlander v. Friedlander, supra.* It is only a manifest abuse of discretion which will warrant this court in substituting its judgment for that of the trial court in the disposition of property in a divorce action. *Morris v. Morris, supra; Mumm v. Mumm*, 63 Wn.2d 349, 387 P.2d 547 (1963); *Beakley v. Beakley, supra; Lucker v. Lucker*, 71 Wn.2d 165, 426 P.2d 981 (1967); *Roach v. Roach*, 72 Wn.2d 144, 432 P.2d 579 (1967); *Garrett v. Garrett*, 67 Wn.2d 646, 409 P.2d 470 (1965).

These rules make clear that the characterization of the property is not necessarily controlling. *Huff v. Huff*, 68 Wn.2d 501, 413 P.2d 818 (1966); *Wolfisberg v. Wolfisberg, supra; Folsom v. Folsom*, 106 Wash. 315, 179 Pac. 847 (1919).

In *Webster v. Webster*, 2 Wash. 417, 419, 26 Pac. 864 (1891), we said:

> [I]t is an equitable division of the property rights of the parties that the court is authorized to make. . . . [T]he parties shall bring into court all their property, and a complete showing must be made. Each party must lay down before the chancellor all that he or she has, and, after an examination into the whole case, he makes an equitable division. . . . The law does not require an equal division of the property, but a "just and equitable"

division, and as no general rule for a just and equitable division can be laid down, but each case must be adjusted according to its own merits and the particular circumstances surrounding it, the court investigates all the circumstances . . . .

See, also, *High v. High,* 41 Wn.2d 811, 820, 252 P.2d 272 (1953); *Luithle v. Luithle,* 23 Wn.2d 494, 161 P.2d 152 (1945).

In *Patrick v. Patrick, supra* at 145, we said:

In disposing of the appellant's assertions that the property division is arbitrary and capricious, we believe it is unnecessary to consider in detail whether certain property involved is to be characterized, piece by piece, as community or separate property. *All* property of parties to a divorce action is before the court for a just and equitable division. RCW 26.08.110. In prior decisions, we have recognized that the characterization of property as "community" or "separate" property is not necessarily controlling. See *Folsom v. Folsom,* 106 Wash. 315, 179 Pac. 847; *Morse v. Morse,* 42 Wn. (2d) 229, 254 P. (2d) 720.

The memorandum opinion of the trial court indicates a conscientious attempt to apply these rules in the division of the property. We must conclude that the trial court's attempt to effect a substantially equal division of property between the parties was not an abuse of discretion. The decree must, however, be modified in order to give effect to the revaluation of the tenancy in common lands which shall be made after the case be reopened for further evidence on this single issue. In all other respects, the judgment is affirmed.

The case is remanded for further proceedings in accordance with this opinion. Costs will be allowed neither party on this appeal.

FINLEY, C. J., HUNTER, HAMILTON, and NEILL, JJ., concur.