# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re the Marriage of: | ) | No. 75967-1-I |
|  | ) |  |
| LESLIE KAY LINDSKOG, | ) | DIVISION ONE |
|  | ) |  |
| Appellant, | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| CHRISTOPHER MARK BURROWS, | ) | UNPUBLISHED |
|  | ) |  |
| Respondent. | ) | FILED: April 9, 2018 |
|  | ) |  |

Cox, J. — Leslie Lindskog primarily appeals the property valuation, division, and distribution decisions of the trial court in its decree dissolving her marriage to Christopher Burrows. She fails in her burden to show that the trial court abused its discretion in any respect relevant to this appeal. We affirm.

Lindskog and Burrows were married in 1990, and separated February 1, 2015, almost 25 years later. At the time of the dissolution proceedings, Lindskog was 55 and Burrows was 65 years old.

In 1997, the couple, along with David Jack, formed Evergreen Building Products, LLC ("Evergreen"), a company specializing in "architectural design

elements for residential and commercial properties." Jack later left the company. In payment of his ownership interest, he received "preferred units," payable as a priority upon the liquidation or sale of Evergreen.

Lindskog and Burrows loaned Evergreen $734,421 and received a shareholder note (the "Note") in return. This Note was a primary subject of dispute in the marriage dissolution proceedings that followed.

Throughout the majority of their marriage, Lindskog worked at home raising their children. Burrows worked, first in various businesses, and starting in 1997, at Evergreen.

Lindskog petitioned for dissolution on June 2, 2015. After a four-day trial in June and July 2016, the trial court entered its findings, conclusions, and a dissolution decree in October 2016.

Lindskog appeals.

## VALUATION OF EVERGREEN AND THE NOTE

Lindskog argues that the trial court abused its discretion by accepting the valuation of Evergreen by one expert over that of another expert. She also claims that the valuation of the Note required treating the income stream from it as a community asset. We disagree with both arguments.

A trial court has broad discretion in valuing property in a dissolution action, and weighing expert opinions.[1] This court will not reverse that valuation absent

---

[1] In re Marriage of Gillespie, 89 Wn. App. 390, 403, 948 P.2d 1338 (1997); In re Marriage of Sedlock, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993).

an abuse of discretion.[2] A trial court does not abuse its discretion if its property valuation is within the range of the evidence.[3] If a credible expert testifies that his or her valuation is based on an accepted accounting method and the trial court accepts that value or a value within the range of the expert's testimony, the trial court's valuation is considered to be supported by substantial evidence and should be affirmed on appeal.[4]

The parties jointly hired Alan Knutson to value Evergreen, and he submitted his report valuing the company at $270,000 to $356,500, depending on the valuation method used. He explained that he believed the method resulting in the $356,500 value was the most "appropriate." He arrived at this figure using the "income capitalization method" or "income approach." Under this method, one of five set out in In re Marriage of Hall, the average net profits of the company are determined and this figure capitalized at a selected interest rate.[5] "This result is considered to be the total value of the business including both tangible and intangible assets."[6]

---

[2] Gillespie, 89 Wn. App. at 403; Sedlock, 69 Wn. App. at 491.

[3] Worthington v. Worthington, 73 Wn.2d 759, 764-65, 440 P.2d 478 (1968); In re Marriage of Soriano, 31 Wn. App. 432, 435, 643 P.2d 450 (1982).

[4] See In re Marriage of Harrington, 85 Wn. App. 613, 637, 935 P.2d 1357 (1997).

[5] 103 Wn.2d 236, 243, 692 P.2d 175 (1984).

[6] Id. at 244.

Knutson explained the assumptions he made when using the income approach, including imputation of a reasonable compensation to the owner/manager, anticipated future income stream, and "an appropriate capitalization or inverse of a multiplier." He determined annual expected earnings to be $150,000 based on a "weighted five year historical average figure" with "significant volatility." He then selected and applied a capitalization rate of 25 percent to "compensate for the risk/uncertainty" and determined the gross value of Evergreen to be $600,000. He subtracted Jack's "owner's equity," valued on Evergreen's financial statements at $243,497, for a final value of $356,500.

Importantly, Knutson testified that because this method values a company based on its expected future earnings capitalized at a selected rate, net tangible assets are not part of the calculation.[7] Thus, although the Note was shown as a debt on Evergreen's books, it did not enter into Knutson's calculations because it would not be repaid to the shareholders and it was irrelevant in calculating the income stream of the business. Knutson treated the $5,200 monthly interest paid on the Note as a liability of Evergreen because that interest payment was treated as income taxable to the community during the parties' marriage.

Lindskog was dissatisfied with Knutson's valuation of Evergreen, and shortly before trial hired Steve Kessler for a second opinion. Kessler testified at trial that he was initially unaware of Jack's preferred units and evaluated

---

[7] See Hall, 103 Wn.2d at 243-44.

4

Evergreen at $1.4 million. Once he deducted the obligation owed to Jack, Kessler adjusted his valuation to $1,156,503.

The trial court found Knutson's valuation to be the more credible of the two and it valued Evergreen at $356,500. This was at the high end of the range of values Knutson gave, using the income approach. The court also discussed the mistakes in Kessler's valuation including a lack of evidence supporting his projected growth rate, and a discrepancy between the 14.2 percent capitalization rate he used and the 20 percent rate he claimed to use. The court also noted Kessler's failure to initially include the preferred interest stock held by Jack, despite being timely provided with the pertinent information. Significantly, the trial court further noted that Kessler improperly treated the Note as an asset of the community despite his acknowledgement that the loan would not be repaid.

Lindskog argues that the trial court abused its discretion because Knutson's valuation had to be premised on his treatment of the Note as a debt. She claims that otherwise, Knutson assigned an artificially low value to the assets of the company. She contends that the gross value of Evergreen cannot be $600,000 because the resulting value of tangible and intangible assets is "simply not reasonable" given Evergreen's net income of over $400,000 for each of the two years before trial, and sales of $10 million.[8] We reject Lindskog's arguments.

---

[8] See id.

Knutson explained why he chose a valuation method that did not include the value of net tangible and intangible assets.[9] He explained that, when determining the fair or present value of the future economic benefit to a business owner, it is more important to know the present value of the income stream than the present value of the assets. The latter is only important if liquidation is anticipated.

When questioned about his use of the Note to reduce the amount of tangible assets in his "alternative calculation," he explained that an attempt to compare his valuation using income stream with a valuation based on net assets is like trying to compare "apples and oranges." We agree, as did the trial court.

In sum, the trial court properly exercised its discretion in choosing the valuation to which Knutson testified. That income approach valuation does not value assets, as Lindskog argues.

The trial court's determination as to Evergreen's value is within the range of credible evidence. As such, it is supported by substantial evidence.[10]

The other argument Lindskog makes is also unpersuasive. She claims that the Note should have been treated as a community asset and divided as part of the court's division of the assets of the parties. The record does not support this argument.

---

[9] See id. at 244.

[10] See Worthington, 73 Wn.2d at 764-65.

The evidence at trial was that the community benefited from the Note during the marriage of the parties due to the monthly interest thereon. But the claim that the Note would continue to be a community asset was illusory because it was uncontested that it would not be paid upon the sale of the company. Thus, it was not a community asset to be distributed on dissolution. The trial court did not abuse its discretion by not including this Note as an asset to be divided between the parties.

## DISTRIBUTION OF COMMUNITY ASSETS

Lindskog argues that the trial court's distribution of the community assets was disproportionate and inequitable and must be reconsidered. We disagree.

In dissolution proceedings, the trial court must make a "just and equitable" distribution of the parties' assets and liabilities based on the factors set forth in RCW 26.09.080.[11] The statute requires the trial court to consider (1) the nature and extent of the community and separate property, (2) the duration of the marriage, and (3) "[t]he economic circumstances of each spouse" at the time of dissolution.[12] The statutory factors are not exclusive.[13]

---

[11] In re Marriage of Larson and Calhoun, 178 Wn. App. 133, 137, 313 P.3d 1228 (2013) (quoting RCW 26.09.080).

[12] RCW 26.09.080.

[13] Larson, 178 Wn. App. at 138.

7

"A just and equitable division 'does not require mathematical precision or an equal distribution'" but it must be fair in light of all the circumstances.[14] In addition, the longer the marriage, the greater the likelihood that the trial court will determine that a disproportionate distribution of the parties' assets is just and equitable.[15] Finally, the trial court may "consider the property division when determining maintenance and may consider maintenance in making an equitable division of the property."[16]

Because the trial court is in the best position to assess the parties' assets and liabilities and to determine what is fair and equitable, this court will not reverse the trial court's decision absent a manifest abuse of discretion.[17] "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons."[18]

The trial court considered all of the criteria set forth in the statute and distributed approximately 58 percent of the total community assets to Burrows and 42 percent to Lindskog. It awarded the Crystal Mountain condominium (Capital Skier's Stock) valued at $245,000 to Lindskog as her separate property

---

[14] Id. (quoting In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)).

[15] In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572 (2007).

[16] In re Marriage of Estes, 84 Wn. App. 586, 593, 929 P.2d 500 (1997).

[17] In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

[18] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

even though Burrows claimed it was community property.[19] It found that the community had a $21,511 lien on that property based on contributions for dues and upkeep. The trial court awarded Lindskog the community residence and the majority of the liquid assets including investment accounts.

The trial court awarded Evergreen to Burrows. The parties, along with Burrows' mother, also owned a warehouse that they rent to Evergreen. The trial court awarded the warehouse to Burrows but adopted the valuation provided by Lindskog's expert, finding that it was worth $990,000 with an outstanding mortgage of $510,000.

Burrows was awarded half of the community's 401(k) retirement account and an additional $25,888 that he had contributed after the parties separated. He was also assigned the credit card debt and education loans of the parties' children totaling over $46,000. As an "equalization payment," the trial court awarded Lindskog a $100,000 lien payable upon the sale of Evergreen.

Based on the parties' combined monthly income of $21,200, the trial court awarded $8,500 per month maintenance to Lindskog until she reaches age 60. It decreed that Burrows could move to modify maintenance if he retired before the maintenance obligation expired, but he would still have to prove that modification was warranted.

Lindskog argues that the trial court's division resulted in a "patent disparity in the parties' economic circumstances" and must be reversed as a manifest

---

[19] See RCW 26.09.080(1).

abuse of discretion. She claims that the trial court unfairly awarded Burrows more than 50 percent of the community assets and that its distribution left him with more income despite the court's alleged attempt to equalize the parties' earning capacities. We reject Lindskog's arguments because the record supports the trial court's discretionary decision.[20]

For example, Lindskog argues that she only receives a third of the income available to Burrows because he had a monthly income of $42,808 and could withdraw up to $16,666 a month. But she bases that argument on amounts derived from the parties' 2014 tax return, which the court applied only when determining the proportion of education expenses that would be required from each party to support their youngest child who was still in college.

For purposes of asset allocation and maintenance, the court considered all of the evidence relevant to expected future monthly earnings and found Burrows' income to be $19,200 and Lindskog's to be $2,000. In support of its determination, the trial court noted that Evergreen has had "ups and downs" as reflected in the parties' tax returns. It determined that Burrows' assets and income, because they were tied to the business, were more volatile and there were risks associated with the sale of Evergreen.

There was substantial evidence supporting the trial court's findings regarding the volatility of Evergreen's earnings and profits and how that volatility might impact Burrows' future income and Evergreen's future value. At the time of

---

[20] In re Marriage of Wright, 179 Wn. App. 257, 262, 319 P.3d 45 (2013).

trial, Evergreen had limited inventory and it was at the top of its $1.3 million credit limit with the bank. It had pledged both accounts receivable and inventory to borrow on the line of credit.

In addition, Evergreen's growth rate from 2014 to 2015 was a negative 3.22 percent and growth from 2015 to 2016 was only 6.18 percent. Its pretax income increased in 2014 by 74.15 percent but then decreased by 3.21 percent in 2015 and another 10.2 percent the following year. Finally, although Burrows' current agreement with the bank allowed him a maximum withdrawal of $16,666 per month, future allowances were not guaranteed.

Lindskog further argues that the trial court abused its discretion in justifying its decision based on the risks and costs associated with sale of the business when there was no evidence that sale of the business was imminent.[21] But the record shows that, in allocating assets, the trial court considered the uncertainty of the business as a whole, which included the unknown risks and costs associated with any potential sale.

Lindskog claims that the division was unjust because, while Burrows saved $25,000 for retirement during the parties' separation, her earnings plus maintenance were less than her monthly expenses.[22] She argues that in five and a half years when her maintenance runs out, she will be expected to live off of her limited retirement plus the $24,000 annual minimum wage that the court

---

[21] Cf. In re Marriage of Berg, 47 Wn. App. 754, 759, 737 P.2d 680 (1987).

[22] See Wright, 179 Wn. App. at 262.

11

expects she can earn. In comparison, Burrows will have increased his retirement, "likely still own the community business, have interest payments of $5,200, company draws, income from the Tahoma building and social security."

Lindskog's arguments fail to establish a manifest abuse of discretion because there was evidence in the record showing a less optimistic financial future for Burrows and a more optimistic one for her.

For example, although Lindskog claims that she was unable to save money while receiving maintenance, there was evidence showing that she spent discretionary funds after separation on nonessential trips and purchases. There was also evidence that her own savings increased from $18,050 to $35,853 in the six month period of October 2015 to March 2016. Finally, although she claims she will have to live off her limited retirement and minimum wage when her maintenance runs out, the trial court considered the $100,000 lien transfer to be part of her retirement.

As to Burrows' financial future, he is 10 years older than Lindskog and recently diagnosed with glaucoma. He was 65 at the time of trial, and testified that he was hoping to retire at age 66. Unless he establishes a change in circumstances, he will be paying Lindskog $8,500 per month until he is 70. His ownership of Evergreen constitutes a significant portion of his assets and its value is volatile.

Lindskog's arguments ask this court to override the trial court's broad discretion by reweighing the evidence. We refuse to do so. Rather, we conclude that given Burrows' age and proximity to retirement, and the uncertainties

regarding Evergreen's future at the time of trial, the trial court did not abuse its discretion in distributing the assets.[23]

## LIEN ON EVERGREEN

Lindskog argues that the trial court abused its discretion in awarding her a $100,000 lien on Evergreen, payable when Burrows sells the company, without also including interest on the lien. She claims that lien does not provide for payment of her share of the community property within a "reasonable time" of dissolution.[24] We disagree.

As part of the overall property division, this court reviews for abuse of discretion the lien award.[25]

Lindskog argues in her briefing on appeal that because it is unknown if or when Burrows may sell Evergreen, the award of a lien leaves her without her full share of the community property for an indefinite period that is solely within Burrows' control. She relies on In re Marriage of Foley, to support her argument that the use of the lien violates her right to receive her share of the community property within a reasonable amount of time.[26] Her reliance is misplaced.

---

[23] See Rockwell, 141 Wn. App. at 243.

[24] See In re Marriage of Foley, 84 Wn. App. 839, 844, 930 P.2d 929 (1997).

[25] Id.

[26] 84 Wn. App. 839, 844, 930 P.2d 929 (1997).

In Foley, David Foley was awarded the house, the parties' most valuable asset, which he was required to sell within four months.[27] On appeal, Division Three of this court held that it was within the trial court's discretion to order Foley to equalize the property distribution by refinancing or selling the house.[28] But that decision does not mean that the trial court in this case abused its considerable discretion by making a different decision here, especially since the lien was only a portion of the total assets awarded to Lindskog in the decree.

Lindskog also cites to this court's opinion in Byrne v. Ackerlund, but that decision fails to help her.[29] In Byrne, Pauline Byrne sought to enforce liens on real property that had been awarded to her spouse William Ackerlund under a settlement agreement in dissolution proceedings.[30] This court held that when a property settlement does not fix a time for disposition of the parties' assets, the court will presume that a reasonable time was intended.[31]

Byrne did not bring suit to enforce the liens until 10 years after the dissolution decree.[32] At that point, she was entitled to seek payment of the liens

---

[27] Id.

[28] Id.

[29] 44 Wn. App. 1, 719 P.2d 1363 (1986), rev'd, 108 Wn.2d 445, 739 P.2d 1138 (1987).

[30] Id. at 3.

[31] Id. at 5.

[32] Id. at 3.

by involuntary sale if necessary because a reasonable amount of time had passed.[33] This decision does not support Lindskog's argument.

Her financial declaration submitted in support of her request for an award of attorney fees on appeal states, "Chris paid me the $100,000 'lien' that was owed to me under the decree in September 2017 . . . ."[34] She does not argue, nor could she, that payment of this lien within a year from the entry of the dissolution decree exceeds a "reasonable time" for distribution of the $100,000 amount awarded in the decree.

In any event, the supreme court reversed this court's decision in Byrne in part because the property division and lien award there were the result of an enforceable agreement between the parties.[35] The supreme court also noted that "it *may* be inappropriate for a dissolution court to order a lien/title division of property where the parties have not agreed to it and the possibility of future strife is great."[36] In view of the record before us, the Byrne case does not support Lindskog's argument.

Lindskog also argues that because Burrows is not required to sell the property and pay the lien within a reasonable time from dissolution, the trial court should have awarded her a judgment instead of a lien so that she would have

---

[33] Id. at 5.

[34] Financial Declaration of Appellant dated February 6, 2018 at 7.

[35] Byrne v. Ackerlund, 108 Wn.2d 445, 451, 739 P.2d 1138 (1987).

[36] Id. (emphasis added).

15

been entitled to statutory interest on the award pending payment.[37] We again disagree.

First, it appears that the property has been sold —Lindskog has been paid the full amount of the lien. Whether the trial court should have entered a judgment instead of using a lien to distribute funds to her is now moot.

Second, this argument disregards the award of the majority of the community's liquid assets to Lindskog and the assignment of all of the community's debt to Burrows. It also disregards Burrows' testimony that he was considering retiring in two years. The trial court was well within its discretion in using a lien as the method for making the $100,000 distribution to her.

## MODIFICATION OF MAINTENTANCE

Lindskog argues that the trial court improperly ruled that Burrows is entitled to a hearing to modify his maintenance obligation if he retires before that obligation terminates without providing the statutorily required "substantial change in circumstances." Lindskog is wrong.

RCW 26.09.170(1) provides that maintenance may only be modified "upon a showing of a substantial change in circumstances."[38] Lindskog argues that Burrows' retirement is not a substantial change in circumstances because it was within the contemplation of the parties at trial.[39] She further argues that just

---

[37] See Ovens v. Ovens, 61 Wn.2d 6, 10, 376 P.2d 839 (1962).

[38] See Wagner v. Wagner, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980).

[39] Id. at 98-99.

because Burrows retires, there is no evidence his ability to pay maintenance would change because there is no evidence Burrows' income would drastically decrease if he did retire. Her arguments are unpersuasive.

The final dissolution order does not and could not change the statutory standard for modification. Rather, it merely states that "the court shall make a determination *whether* modification is warranted" at the time of retirement.[40] This provision recognizes the financial uncertainties presented by Burrows' age and his testimony that his income may drop due to a sale of the company. Because the trial court could not then determine what effect, if any, Burrows' retirement might have on his financial condition, the decree provides that the issue of Burrows' ability to pay can be revisited if he retires. There is not a modification of the requirements of RCW 26.09.170(1) to show a substantial change with regards to his financial circumstances before maintenance could be modified.[41] Any reading to the contrary of the trial court's decision is not well-taken.

## ATTORNEY FEES

Finally, Lindskog asks for an award of her attorney fees on appeal. We deny the request.

---

[40] (Emphasis added.)

[41] See In re Marriage of Coyle, 61 Wn. App. 653, 658, 811 P.2d 244 (1991).

Pursuant to RCW 26.09.140, this court has discretion to award attorney fees to either party. In considering a request for fees pursuant to RCW 26.09.140, this court considers "the parties' relative ability to pay" and "the arguable merit of the issues raised on appeal."[42]

Lindskog argues that she has used her limited funds to pay for her attorney fees below, and she does not have the ability to pay her fees on appeal. She further argues that appeal was necessary because of Burrows' "untenable positions" with regard to property division and valuation of Evergreen. Finally, she argues that, regardless of whether this court reverses or affirms, her need relative to Burrows' ability to pay warrants an award of fees on appeal

The record does not support her claim that she is unable to pay her attorney fees on appeal. Accordingly, we deny her request for such an award.

We affirm the decree of dissolution and deny her request for attorney fees on appeal.

_Cox, J._

WE CONCUR:

_Mann, J._

_Becker, J._

---

[42] In re Marriage of Leslie, 90 Wn. App. 796, 807, 954 P.2d 330 (1998).