

2013 JUL 29 AM 11:41

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 69047-7-I |
| MICHAEL F. MORGAN, | ) | |
| | ) | DIVISION ONE |
| Appellant, | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| COLLEEN MORGAN, | ) | |
| | ) | FILED: July 29, 2013 |
| Respondent. | ) | |

BECKER, J. — Michael Morgan appeals the trial court's orders dissolving his marriage to Colleen Morgan and providing for the care and support of their child. Because Michael fails to demonstrate any error or abuse of discretion in the orders before this court on review, we affirm. We also grant Colleen's request for attorney fees on appeal.

Michael and Colleen married in January 1998 and had one daughter in May 1999. During the marriage, Colleen did not work outside the home, but cared for the couple's child. Colleen had some college education but never obtained a degree. Colleen also struggles with alcoholism. Michael is an attorney. During the marriage, Michael had worked as a public defender and as a municipal court judge. At the time of trial, Michael was self-employed as an attorney. Michael and Colleen separated in November 2009.

The trial court heard evidence and argument at trial in September 2011 and made an oral ruling on November 9, 2011. On March 1, 2012, the trial court entered a parenting plan providing for the couple's child to reside with Michael and limiting Colleen's residential time under RCW 26.09.191(3)(c) based on Colleen's admitted alcohol problem. The plan provides for three phases of increasing visitation and residential time for Colleen. The first phase requires Colleen to comply with treatment conditions for six months, with Michael responsible for paying supervision fees for Colleen's limited visitation. The second six-month phase requires each party to pay half the cost of supervision of Colleen's increased visitation. The final phase allows Colleen residential time and does not require a paid supervisor.

On March 20, 2012, the trial court entered written findings of fact and conclusions of law, a final dissolution decree, and a child support order. The court listed the separate property of each party and valued the community property at $353,290 and determined that Colleen would receive 55 percent and Michael would receive 45 percent. The final division of the property included a cash payment of $137,393 from Michael to Colleen. The court ordered Michael to pay maintenance to Colleen for five years. The trial court also found that Michael intentionally failed to pay maintenance as required by temporary orders from November 2011 to February 2012 and entered a contempt order requiring him to pay $10,000 in overdue maintenance plus $976 in fees.

On August 29, 2012, the trial court found Michael in contempt for failing to pay supervision fees charged for Colleen's visitation with the couple's child between March and August 2012.

Michael appeals.

## ANALYSIS

### Property Division

Michael first challenges the trial court's division of the couple's assets and liabilities as well as its characterization of certain property. In a dissolution action, all property, community and separate, is before the court for distribution. In re Marriage of Stachofsky, 90 Wn. App. 135, 142, 951 P.2d 346, review denied, 136 Wn.2d 1010 (1998). The trial court's characterization of property as community or separate is a mixed question of law and fact. In re Marriage of Skarbek, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). Mischaracterization does not require remand unless the characterization is crucial to the distribution. In re Marriage of Langham & Kolde, 153 Wn.2d 553, 563 n.7, 106 P.3d 212 (2005).

We review an order distributing property for an abuse of discretion and will only reverse a trial court's decision if there is a manifest abuse of discretion. In re Marriage of Kraft, 119 Wn.2d 438, 450, 832 P.2d 871 (1992). The relevant factors in determining a just and equitable distribution of property are provided by statute. They include (1) the nature and extent of community property, (2) the nature and extent of separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of the property is to become effective. RCW 26.09.080. The trial court is in the best

3

position to determine what is "fair, just and equitable" under the circumstances. In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (internal quotation marks omitted), quoting In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790 (1977). We do not weigh conflicting evidence or the credibility of witnesses or substitute our judgment for that of the trial court. In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234, review denied, 129 Wn.2d 1030, 129 Wn.2d 3031 (1996).

Michael first argues that the trial court "improperly awarded $31,453" to Colleen by failing to divide the contents of a U.S. Bank account in Colleen's name. The account had a balance of $31,453 as of the date of separation and a zero balance at the time of trial. He argues that the trial court allowed Colleen a "windfall" based on her removal of community funds from the account after separation and before trial and complains that at the final hearing on March 20, 2012, Colleen's counsel falsely argued that the funds had been addressed in temporary orders.

But Michael does not argue or establish that Colleen wasted, concealed, or misused the money and fails to identify any court order prohibiting Colleen from accessing community funds prior to trial. And Michael mischaracterizes Colleen's argument at the hearing. In response to Michael's request for a distribution of 45 percent of the account balance as of the date of separation, counsel for Colleen argued that the proper date of valuation was the date of trial, given the parties' acknowledged need to pay their respective living expenses following separation. Counsel argued that the court entering temporary orders

"was taking into account the fact that each had these various accounts in their respective names" when it directed each party to be responsible for his or her own living expenses. Thus, counsel argued, "[I]t's complete fiction to pretend that my client is awarded $31,000 when the account is down to zero because she had to live on it."

Based on the record before this court, Michael fails to establish any abuse of discretion in the trial court's decision to value the account as of the date of trial and make no distribution based on the zero balance. See In re Marriage of Kaseburg, 126 Wn. App. 546, 556, 108 P.3d 1278 (2005) (court may consider waste or concealment, but only distributes assets before it at the time of trial).

Michael next claims that the trial court "improperly enriched" Colleen by crediting him only $4,403 to reimburse him for his payment of $7,485 of Colleen's separate debts and $34,934 of community debts. Michael complains that the trial court failed to enter sufficiently specific findings to explain what he describes as a "39% reimbursement." Without citation to authority, Michael asserts that he should be reimbursed for the entire $7,485 he claims he paid for Colleen's separate debts and $19,214 for his payment of community debts, based on a 55 to 45 percent division.

In the decree of dissolution, the trial court stated, "Petitioner sought/claimed paid separate debt of the respondent in the amount of $11,426. Petitioner is awarded $4,403 which was taken into account when computing the cash payout by petitioner to respondent." In its oral ruling, the trial court explained,

> I looked carefully at a number of the different items that Mr. Morgan was asking for that he asserted was, essentially, separate debt. And I actually disagree with Mr. Morgan's analysis on a number of the items. . . . I don't find that those are necessarily separate debt of Mrs. Morgan that Mr. Morgan paid. But I am going to award Mr. Morgan some money that he is seeking for paying what he has describe[d] as Mrs. Morgan's debt.

The record demonstrates that the trial court considered Michael's request for reimbursement, reviewed his supporting evidence, disagreed with his analysis, and entered a ruling within the range of the evidence presented at trial. Contrary to Michael's bare assertions, the trial court is not required to demonstrate mathematical precision in order to make an equitable property division. In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996). Michael fails to demonstrate any abuse of discretion in the trial court's treatment of his claim for reimbursement.

Next, Michael contends that the trial court failed to properly characterize as his separate property a ring he had inherited from his mother but was lost at the time of trial. Colleen testified that Michael gave her the ring as a gift and that she lost the ring while swimming. Recognizing the factual dispute, the trial court found that "neither party proved by a preponderance of the evidence" that the ring was his or her own separate property. The trial court listed the ring as community property and explained, "I'm splitting that 50/50," "in light of all the factors that need to be taken a look at for property division, and specifically, under [RCW] 26.09.080." The court determined the value at $18,300, and gave Michael a $9,150 credit against his cash payment to Colleen.

Michael does not contend or demonstrate that the trial court's characterization of the missing ring was crucial to its distribution or that the alleged mischaracterization of the ring as community property resulted in an inequitable property division. Each party claimed the ring as separate property and admitted that it was lost and not available for distribution. Under the circumstances, whether or not the trial court properly characterized the missing ring, Michael fails to establish an abuse of discretion it its decision to give him a credit for half the value he claimed for the ring. See Worthington v. Worthington, 73 Wn.2d 759, 768, 440 P.2d 478 (1968) (although trial court may not have properly characterized timberland, its approach was correct in light of facts, statute's emphasis on just and equitable division, and law providing all property is subject to jurisdiction of court); In re Marriage of Zier, 136 Wn. App. 40, 46, 147 P.3d 624 (2006) (where division of property is just and equitable under all the circumstances of the marriage, mischaracterization of one or another asset is not proper basis to reverse property distribution), review denied, 162 Wn.2d 1008 (2007).

Michael also argues that the trial court failed to characterize and distribute a Moclips condominium listed in Colleen's trial brief. Because Michael fails to identify any evidence in the record before the trial court indicating that either Michael or Colleen had any ownership interest in a condominium in Moclips, Washington, he fails to demonstrate error.

Parenting Plan

Michael contends that the trial court exceeded its authority and abused its discretion by allocating costs for Colleen's visitation supervision to him in the parenting plan. Without citation to relevant authority, Michael claims that the trial court lacks statutory authority to order a nonsupervised parent to pay for supervision of the other parent's visits. He also claims that the trial court abused its discretion by ordering him to contribute to Colleen's supervision costs because it creates financial disincentives for each party.

Parenting plan decisions are within the trial court's broad discretion, and we will not reverse unless the decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). A primary concern in establishing parenting plans is that parenting arrangements should serve the best interests of the child. RCW 26.09.002. RCW 26.09.191(3)(c) specifically authorizes the trial court to place limits on parenting plan provisions where the court finds that a parent's performance of parenting functions is impaired by alcohol abuse. There is nothing in the statute, nor does Michael cite any other legal authority, which prevents the court from requiring supervised visitation in such a situation and allocating associated costs between the parents.

Here, the trial court found that the child's best interests included a relationship with both parents, regular visits with Colleen, and increasing residential time with Colleen conditioned on Colleen's demonstrated sobriety. Given the increase in visitation and residential time for Colleen and the

decreasing allocation of costs to Michael over the course of the three phases, each party has sufficient incentive to comply with the court's conditions. Michael fails to demonstrate that the trial court exceeded its authority or abused its broad discretion in the challenged provision in the parenting plan.

Contempt

Michael next challenges the trial court's orders finding him in contempt. We review a trial court's decision in a contempt proceeding for an abuse of discretion. In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). Contempt of court is defined in part as intentional disobedience of a lawful court order. In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995), citing RCW 7.21.010(1). In the context of dissolution and parental support, contempt is governed by RCW 26.09.160. Under that statute, a court "shall find" a party in contempt based on a written finding, after a hearing, "that the parent, in bad faith, has not complied with the order establishing residential provisions for the child." RCW 26.09.160(2)(b); see James, 79 Wn. App. at 440.

Michael challenges the August 29, 2012, contempt order, claiming (1) the trial court lacked authority to enter a contempt finding for nonpayment of visitation supervision costs under In re Marriage of Young, 26 Wn. App. 843, 615 P.2d 508 (1980); (2) the order at issue was not lawful because the court lacked authority to order one party to pay visitation supervision costs of another party; and (3) evidence of Colleen's failure to comply with the order excused him from paying for completed visitation sessions.

Michael's reliance on Young is misplaced. In Young, the court held that contempt proceedings cannot be used to enforce provisions of a property division not related to a support obligation. Young, 26 Wn. App. at 845-46 (property division requiring monthly installments on settlement in lieu of interest in military pension was not related to support obligation and therefore not enforceable in contempt action). Here, RCW 26.09.160(2)(b) specifically provides for enforcement of parenting plan provisions through contempt proceedings. And as discussed above, Michael offers no support for his bald assertion that the trial court lacked authority to allocate costs of Colleen's visitation supervision to him in the parenting plan. We also reject Michael's baseless claim that his obligation to pay supervision fees for completed visitation sessions was in any way conditioned on the supervisors' submission of monthly reports or Colleen's compliance with treatment conditions. Given the provision in the parenting plan stating "During Phase 1 the father shall pay the cost of the supervisor," and Michael's admission that he did not pay the $1,560 charged for supervised visits between March 3, 2012, and August 18, 2012, despite having the ability to pay, the trial court did not err in finding him in contempt in the August 29 order.

Michael also challenges the March 20, 2012, contempt order, arguing that the April 22, 2010, temporary order directing him to pay $2,500 per month in maintenance was (1) not valid after the trial court's November 9, 2011 oral ruling and/or (2) "superseded by later court orders." Michael also claims that the contempt order required him to pay more maintenance than he was initially ordered to pay.

Nothing in the record supports Michael's claims. Although a temporary order may be revoked or modified, it will terminate only "when the final decree is entered." RCW 26.09.060(10)(c). Michael fails to identify any order revoking or modifying the April 22, 2012, temporary maintenance order before the March 20, 2012, entry of the final decree. And in the findings of fact and conclusions of law also entered on March 20, 2012, the trial court specifically adjusted the date of the final maintenance payment to take into account the amount of back maintenance addressed in the contempt order. Michael fails to demonstrate any error in the March 20, 2012, contempt order.

Maintenance

Michael next challenges the trial court's award of maintenance to Colleen. We review the trial court's decision on an award of maintenance for abuse of discretion. In re Marriage of Zahm, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999). "An award of maintenance that is not based upon a fair consideration of the statutory factors constitutes an abuse of discretion." Crosetto, 82 Wn. App. at 558. The court must consider the parties' postdissolution financial resources; their abilities to meet their needs independently; the duration of the marriage; the standard of living established during the marriage; the parties' age, health, and financial obligations; and the ability of one spouse to pay maintenance to the other. In re Marriage of Williams, 84 Wn. App. 263, 267-68, 927 P.2d 679 (1996), review denied, 131 Wn.2d 1025 (1997); RCW 26.09.090(1)(a)-(f). Ultimately, the court's main concern must be the parties' economic situations postdissolution. Williams, 84 Wn. App. at 268. "The only limitation on amount and duration of

maintenance under RCW 26.09.090 is that, in light of relevant factors, the award must be just." In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990).

It is clear from the record that the trial court here explicitly considered each factor in its oral ruling and finally determined Colleen had a need for maintenance and Michael had the ability to pay. Michael does not contend that the trial court failed to consider any of the statutory factors. Instead, without citation to relevant authority, Michael contends that the trial court improperly imputed income to him in determining the maintenance award. He claims that income may be imputed only for setting child support and that the trial court's decision here exceeded its authority and was not supported by sufficient evidence.

But Michael mischaracterizes the record. The trial court imputed income to him under RCW 26.19.071 for the purposes of determining the amount of child support. The court also imputed income to Colleen for child support purposes. After reviewing those factors on the record, the trial court directed Colleen's counsel to "work on the child support work sheets, as well as the final child support order," "with those imputed income figures." Then the court turned to the issue of maintenance and reviewed the statutory factors under RCW 26.09.090, as well as "a number of other non-statutory factors that are set forth within case law." The trial court found that Michael had the ability to pay maintenance, in part, based on an

> analysis of separate property that I have taken a look at, as well as
> the ability of Mr. Morgan to meet his financial needs. And again, in

part, that is based on my finding that Mr. Morgan is under-
employed and the amount that I have imputed income to him.

Michael fails to identify any authority prohibiting a trial court from considering its previous rulings on child support when making its determination on maintenance. The trial court has the discretion to weigh the relevant statutory factors and circumstances of the case, and we do not substitute our judgment for that of the trial court. Zahm, 138 Wn.2d at 227. Michael fails to demonstrate any abuse of discretion.

### Exclusion of GAL

Michael requests a new trial based on a violation of "open proceedings law." Under article I, section 10 of the Washington Constitution, justice "in all cases shall be administered openly, and without unnecessary delay." "This provision guarantees the public open access to judicial proceedings and court documents in both civil and criminal cases." In re Dependency of J.A.F., 168 Wn. App. 653, 660, 278 P.3d 673 (2012). In order to close a courtroom, the trial court must consider certain factors and enter certain findings. See State v. Bone-Club, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). A closure requiring such consideration occurs "when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." State v. Lormor, 172 Wn.2d 85, 93, 257 P.3d 624 (2011).

During trial on September 26, 2011, the trial court asked the guardian ad litem, who was also listed by Michael as a rebuttal witness, to step into the hall. While the guardian ad litem was out of the courtroom, the trial judge informed the parties on the record about his relationship with another judge Michael had listed

as a rebuttal witness. The court and the parties discussed the relationship, the court's impartiality, and the relevance of the expected testimony at some length. Then Michael removed the witness from his list.[1]

Michael fails to demonstrate a court closure. Michael does not contend and the record does not indicate that any other spectators were asked to leave or prevented from entering the courtroom at any time. Michael fails to demonstrate a violation of the constitutional provision regarding open proceedings and therefore fails to identify grounds for a new trial. See Lormor, 172 Wn.2d at 96 (exclusion of one spectator from courtroom does not constitute closure and does not implicate constitutional right to open proceedings).

<u>Attorney Fees</u>

Finally, Michael contends the trial court abused its discretion by denying his request for attorney fees based on Colleen's intransigence. A trial court has discretionary authority to order an award of attorney fees. Crosetto, 82 Wn. App. at 563. A trial court may award a party legal fees caused by the other party's intransigence. In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120, review denied, 120 Wn.2d 1002 (1992). Intransigence is the quality or state of being uncompromising. Schumacher v. Watson, 100 Wn. App. 208, 216, 997 P.2d 399 (2000). Intransigent conduct includes "foot-dragging" or obstructionist behavior, repeatedly filing unnecessary motions, or making a trial unduly difficult with increased legal costs. Greenlee, 65 Wn. App. at 708.

---

[1] In March 2012, after the entry of the final orders, Michael filed a motion for a new trial. The trial court denied his motion in a written order on May 31, 2012. Michael did not designate the order for review. Generally, our review is limited to orders properly before us based on a timely notice of appeal. RAP 5.2(a).

Without citation to the record, Michael claims that Colleen falsified a urinalysis test, made a false report of domestic violence, and repeatedly lied during her trial testimony. He also argues that Colleen prolonged the litigation by resisting his efforts to limit her residential time with their child based on her alcoholism. Michael also claims that Colleen's counsel made derogatory comments about him.

Michael's unsupported claims do not demonstrate abuse of discretion in the trial court's refusal to find Colleen intransigent. Colleen's attempts to maximize her residential time and the fact that the litigants presented contradictory testimony and other evidence at trial do not require a finding of intransigence. In re Marriage of Wright, 78 Wn. App. 230, 239, 896 P.2d 735 (1995) (highly contested nature of dissolution action alone does not constitute intransigence).

Colleen requests attorney fees on appeal under RCW 26.09.140, providing for an award of attorney fees based on the financial circumstances of the parties, for Michael's intransigence, and for her successful defense of the contempt orders. See In re Marriage of Rideout, 150 Wn.2d 337, 359, 77 P.3d 1174 (2003).

The trial court did not enter findings regarding intransigence on Michael's part, and Colleen does not claim or demonstrate that he has been intransigent during the proceedings before this court. However, upon a finding of contempt in the parental support context, a court "shall order" the parent in contempt to pay the moving party "all court costs and reasonable attorneys' fees incurred as a

result of the noncompliance." RCW 26.09.160(2)(b)(ii). Thus, Colleen is entitled to an award of fees for defending the order of contempt under the parenting plan. See In re Marriage of Eklund, 143 Wn. App. 207, 218-19, 177 P.3d 189 (2008).

And Colleen timely submitted a financial affidavit under RAP 18.1(c) indicating that she is still unemployed and only able to meet her expenses through loans from her father. Determining whether a fee award is appropriate under RCW 26.09.140 requires the court to consider the parties' relative ability to pay and the arguable merits of the issues raised on appeal. Leslie v. Verhey, 90 Wn. App. 796, 807, 954 P.2d 330 (1998), review denied, 137 Wn.2d 1003 (1999). Having considered the merits of Michael's appeal as well as the financial resources available to both parties, we exercise our discretion and grant Colleen her attorney fees and costs on appeal under RCW 26.09.140, provided that she complies with RAP 18.1(d).

Affirmed.

Becker, J.

WE CONCUR: